JOHNNIE H. HILL AND WIFE, CLARA MAE F. HILL v. PINELAWN MEMORIAL PARK, INC., WILLIAM C. SHACKELFORD AND WIFE, JENNIE L. SHACKELFORD

No. 10

(Filed 6 October 1981)

**Lis Pendens § 1; Registration § 5— purchasers for value— prior recordation—effect of lis pendens notice**

G.S. 47-18, our recordation statute, does not protect a purchaser from claims to property arising out of litigation. Therefore, defendants, purchasers of a crypt in a memorial park, were not innocent purchasers for value where they had notice of pending litigation affecting title to the crypt prior to the time they acquired title and recorded their deed.

ON the plaintiffs' petition for discretionary review of a decision by the Court of Appeals reported at 50 N.C. App. 231, 275 S.E. 2d 838 (1981), reversing and remanding in part the judgment of *Lane, Judge,* entered at the 8 October 1979 Session of Superior Court, LENOIR County, wherein defendants were ordered to convey to plaintiffs Crypt "D" of the Garden of Eternal Light in Pinelawn Memorial Park, Inc., more particularly described in Deed Book 710 at Page 176 of the Lenoir County Registry. The plaintiffs' petition for discretionary review pursuant to G.S. 7A-31 was allowed on 7 April 1981.

*Marcus and Whitley, by Harvey W. Marcus and Robert E. Whitley for plaintiff-appellants.*

*Jeffress, Morris, Rochelle & Duke, P.A., by A. H. Jeffress for defendant-appellee Pinelawn Memorial Park.*

*Fred W. Harrison, for defendant-appellees Shackelford.*

MEYER, Justice.

The major issue presented in this case is whether a purchaser of real property who obtains and records the deed thereto after being served with summons in an action by a prior purchaser demanding conveyance of that property is protected as a purchaser for value under our recordation statute, G.S. 47-18. We hold that he is not.

In summary, the evidence at trial showed that on 13 October 1972, the plaintiffs entered into an installment sales contract with defendant Pinelawn Memorial Park for the purchase of a mausoleum crypt. The plaintiffs made it clear to Pinelawn that they wanted to purchase the crypt that faces east toward Kinston, Crypt "D".   Pursuant to the sales contract, plaintiffs made a down payment of $1,035.60 and continued to make regular monthly payments in the amount of $33.02 until March 1977, when they tendered the balance in full and demanded a deed from Pinelawn for Crypt "D". This demand was refused. On 13 February 1974, some fourteen months after the execution of plaintiffs' contract, the defendants Shackelford also entered into an installment sales contract with Pinelawn for the purchase of the same Crypt "D". The contract provided for a down payment of $1,406.04 and two annual installments of $912.00, the first one due on 3 February 1975 and the final one due on 3 February 1976.

The plaintiffs were first put on notice of the second contract of sale in February 1977, when they visited Pinelawn Memorial Park and saw the Shackelford name on Crypt "D". Through their attorney they informed Pinelawn, by letter dated 4 March 1977, that they were prepared to pay in full the balance of the amount due on the contract to purchase Crypt "D". Pinelawn informed them that while their records showed the balance due upon early payment would be $152.97, they also showed the agreement was for the purchase of Crypt "C", not Crypt "D". The plaintiffs mailed a check for the amount due and requested either a deed conveying to them mausoleum Crypt "D" or the return of the check along with information regarding the disposition of Crypt "D". The check was returned by the park administrator, Jean Hinson, with a letter saying that she had forwarded the request to the home office for an answer.

On 25 April 1977, plaintiff brought this suit against defendant Pinelawn Memorial Park, Inc., demanding specific performance of the contract to convey Crypt "D" and damages for breach of contract and fraud, and against William C. Shackelford and wife, Jennie L. Shackelford, demanding conveyance of Crypt "D" and damages for wrongful interference with their contract with Pinelawn and for conspiracy with Pinelawn to defraud the plaintiffs.

Upon being served with summons, the Shackelfords discovered that they had no deed to the crypt and demanded one from Pinelawn. Pinelawn delivered to them a deed dated 18 August 1977 which the Shackelfords recorded in Book 710, page 126 of the Lenoir County Registry on 9 September 1977.

After directing a verdict in favor of the plaintiffs on the issue of whether the defendants Shackelford were innocent purchasers for value, the court submitted the following issues to the jury which were answered as indicated:

1. Did Defendant Pinelawn Memorial Park, Inc., agree with Plaintiffs to convey to Plaintiff Crypt "D"?

Yes.

2. If so, did Defendant Pinelawn Memorial Park, Inc., fail to perform the agreement to convey Crypt "D" to Plaintiffs?

Yes.

3. What amount, if any, are Plaintiffs entitled to recover of Defendant Pinelawn Memorial Park, Inc., for breach of contract?

$100.00.

4. Did the Defendant Pinelawn Memorial Park, Inc., defraud the Plaintiffs?

Yes.

5. If so, what amount of punitive damages are Plaintiffs entitled to recover of Defendant Pinelawn Memorial Park, Inc.?

$10,800.00.

6. Were the Defendants Shackelfords innocent purchasers for value?

<u>No.</u>

7. Did Defendant William C. Shackelford wrongfully interfere with the contractual relationship between Plaintiffs and Defendants?

<u>No.</u>

8. If so, what amount of damages, if any, are Plaintiffs entitled to recover from Defendant William C. Shackelford?

<u>0.</u>

9. What amount of punitive damages, if any, are Plaintiffs entitled to recover from Defendant William C. Shackelford?

<u>0.</u>

Pursuant to these answers, the trial judge ordered Pinelawn to execute and deliver to the plaintiffs a warranty deed conveying Crypt "D", to pay the plaintiffs the sum of $100.00 as damages for breach of the contract to convey and the sum of $10,800.00 as punitive damages, and to return all sums of money paid by the Shackelfords for the purchase of Crypt "D". The court also ordered defendants Shackelford to execute and deliver to plaintiffs a quitclaim deed conveying Crypt "D" and ordered the plaintiffs to pay to defendant Pinelawn the sum of $152.97 representing the balance of the purchase price due as provided in the contract.

Both Pinelawn and the Shackelfords appealed to the Court of Appeals which held that the Shackelfords, and not the plaintiffs, were entitled to a directed verdict on issue number six because of our recordation statute, G.S. 47-18. The court reversed the judgment as to the Shackelfords, affirmed the award of punitive damages against Pinelawn and otherwise as to the plaintiffs vacated the judgment and remanded the cause to the trial court for entry of judgment of compensatory damages to the plaintiff for the money paid by them to Pinelawn pursuant to the contract of purchase plus the $100.00 awarded by the jury.

The Court of Appeals based its decision on its characterization of the Shackelfords as purchasers for value. As such, they would be protected under our recording statute, G.S. 47-18 which provides:

> No conveyance of land, or contract to convey, or option to convey, or lease of land for more than three years shall be valid to pass any property interest as against lien creditors or purchasers for a valuable consideration from the donor, bargainor or lessor but from the time of registration thereof in the county where the land lies, or if the land is located in more than one county, then in each county where any portion of the land lies to be effective as to the land in that county.

N.C. Gen. Stat. § 47-18 (1976).

The purpose of this statute is to enable intending purchasers and encumbrancers to rely with safety on the public record concerning the status of land titles. *See Chandler v. Cameron,* 229 N.C. 62, 47 S.E. 2d 528 (1948); *Grimes v. Guion,* 220 N.C. 676, 18 S.E. 2d 170 (1942). It serves to provide constructive notice of claims to real property. *See Whitehurst v. Abbott,* 225 N.C. 1, 33 S.E. 2d 129 (1945). It has been characterized as a "pure race" statute. *J. Webster, Real Estate Law in North Carolina* § 331 (1971). Where a grantor conveys the same property to two different purchasers, the first purchaser to record his deed wins the "race to the Register of Deeds' office" and thereby defeats the other's claim to the property, even if he has actual notice of the conveyance to the other purchaser. *Bourne v. Lay & Co.,* 264 N.C. 33, 140 S.E. 2d 769 (1965); *Patterson v. Bryant,* 216 N.C. 550, 5 S.E. 2d 849 (1939). Thus, in order to protect himself against the possibility that his grantor has conveyed the same property to another, a purchaser must examine the public registry. If he finds no record of such, even if he knows there has been a prior conveyance, he may record his deed with the assurance that his title will prevail.

However, G.S. 47-18 does not protect a purchaser from claims to property arising out of litigation. Therefore, in order to protect himself against the possibility that there is pending litigation which would affect title to the property, a purchaser must check the *lis pendens* docket. The firmly-established doctrine of *lis pendens* is that:

> When a person buys property pending an action of which he has notice, actual or presumed, in which the title to it is in issue, from one of the parties to the action, he is bound by the judgment in the action, just as the party from whom he bought would have been.

*Rollins v. Henry*, 78 N.C. 342, 351 (1878).

Were the rule otherwise, a defendant could defeat the judgment in such an action by conveying the property in anticipation of it to some stranger and the plaintiff would be compelled to bring a new action against him, and so on indefinitely. *Id.*

Our statute on the effect of *lis pendens* notice on subsequent purchasers provides as follows:

> From the cross-indexing of the notice of lis pendens only is the pendency of the action constructive notice to a purchaser or incumbrancer of the property affected thereby; and every person whose conveyance or incumbrance is subsequently executed or subsequently registered is a subsequent purchaser or incumbrancer, and is bound by all proceedings taken after the cross-indexing of the notice to the same extent as if he were made a party to the action. For the purposes of this section an action is pending from the time of cross-indexing the notice.

N.C. Gen. Stat. § 1-118 (1969). The purpose of this statute is to supplement our registration statute by providing a simple and readily available means of ascertaining the existence of adverse claims to property not otherwise disclosed by the public registry. *Whitehurst v. Abbott*, 225 N.C. 1, 33 S.E. 2d 129 (1945). Both the *lis pendens* provisions and the registration provisions serve to provide record notice upon the absence of which a prospective innocent purchaser may rely. *Id.* However, *lis pendens* notice under our statute is not exclusive. *Lawing v. Jaynes*, 285 N.C. 418, 206 S.E. 2d 162 (1974); *Morris v. Basnight*, 179 N.C. 298, 102 S.E. 389 (1920). It serves only to provide *constructive* notice of pending litigation. *Whitehurst v. Abbott*, 225 N.C. at 6, 33 S.E. 2d at 132. As we stated in *Lawing*, "The *lis pendens* statutes enable a purchaser for a valuable consideration *who has no actual notice* of the pendency of litigation affecting the title to the land to proceed with assurance when the *lis pendens* docket does not

disclose a cross-indexed notice disclosing the pendency of such an action." 285 N.C. at 432, 206 S.E. 2d at 171.

Our registration statute does not protect all purchasers, but only innocent purchasers for value. *See Lawing v. Jaynes,* 285 N.C. 418, 206 S.E. 2d 162; *Whitehurst v. Abbott,* 225 N.C. 1, 33 S.E. 2d 129. While actual notice of another unrecorded conveyance does not preclude the status of innocent purchaser for value, actual notice of pending litigation affecting title to the property does preclude such status. *Compare Lawing v. Jaynes,* 285 N.C. 418, 206 S.E. 2d 162 *with Dulin v. Williams,* 239 N.C. 33, 79 S.E. 2d 213 (1953). Where a purchaser claims protection under our registration laws, he has the burden of proving by a preponderance of the evidence that he is an innocent purchaser for value, *i.e.,* that he paid valuable consideration and that he had no actual notice, or constructive notice by reason of *lis pendens,* of pending litigation affecting title to the property. *Lawing v. Jaynes,* 285 N.C. at 432-33, 206 S.E. 2d at 171-72; *See Waters v. Pittman,* 254 N.C. 191, 118 S.E. 2d 395 (1961); *Whitehurst v. Abbott,* 225 N.C. 1, 33 S.E. 2d 129 (1945); *King v. McRackan,* 168 N.C. 621, 84 S.E. 1027 (1915), *aff'd on rehearing,* 171 N.C. 752, 88 S.E. 226 (1916). The Shackelfords failed to meet this burden.

Defendants Shackelford do not challenge the law set forth in *Lawing.* Instead, they argue that *Lawing* does not apply. They contend that they purchased and acquired their interest in Crypt "D" on either 3 February 1974 when they entered into the contract of purchase, or on 3 February 1976 when they completed payment under the contract. Since at both of these times they had no notice of the plaintiffs' claim to Crypt "D", the Shackelfords argue that the doctrine of actual notice of pending litigation does not apply. We disagree. The interest which the Shackelfords wished to acquire was title to Crypt "D", so the crucial point in time is the time they acquired title. As between a grantor and grantee, title passes upon delivery of the deed. *See Barnes v. Aycock,* 219 N.C. 360, 13 S.E. 2d 611 (1941); *Patterson v. Bryant,* 216 N.C. 550, 5 S.E. 2d 849 (1939); *Warren v. Williford,* 148 N.C. 474, 62 S.E. 697 (1908). The Shackelfords therefore had no title until Pinelawn delivered the deed to them. Furthermore, their title was not effective as against purchasers for value and lien creditors until registration of the deed. N.C. Gen. Stat.

§ 47-18 (1976). *Patterson v. Bryant,* 216 N.C. 550, 5 S.E. 2d 849; *Warren v. Williford,* 148 N.C. 474, 62 S.E. 697.

At the time the Shackelfords acquired their deed and at the time they recorded it, they clearly had actual notice of the plaintiffs' suit as shown by Mr. Shackelford's own testimony:

> The first time that I heard about the controversy, was when the sheriff greeted us. At that time, I did not have a deed to my cemetery lot. The sheriff came down to my house and served papers on me for the first time in my life and my wife was a school teacher and when she got home, I told her to find the deed and to find it then. I never recorded my deed. My wife couldn't find one so I told her to produce me the deed, she had handled the negotiations and she could not and I called an attorney in Kinston which was Leland Heath and I said, 'I've got some papers here I want to bring to you for you to look into.' I later got a deed from Pinelawn.
>
>      . . . .
>
> My wife and I received a copy of the Summons and Complaint in this suit and examined it and then we took it to Leland Heath. I carried it to Mr. Heath and told him to take care of it, to do whatever was necessary that I didn't understand what it was about, just to straighten it out.
>
> I carried the Complaint to Mr. Heath and he recorded the deed for me and recorded it in the Courthouse. My wife and I had the Summons and Complaint. We carried them to him, I looked them over briefly, I wasn't that concerned. I didn't understand what it was for, and at that time, I was really busy and when I got to Mr. Heath's office, then is when I was informed about what it was about. Mr. Heath informed me and my wife about what the nature and purpose of the suit was.

Record at 117-18.

Not only did the Shackelfords obtain their deed from a party to the action, they were parties to the action themselves.

The trial court was correct in instructing the jury to find that the Shackelfords were not innocent purchasers for value. The Court of Appeals erred in reversing the judgment of the trial court.

Since counsel for petitioners conceded in oral argument that the Hills would not be entitled to both the $100.00 awarded as compensatory damages for breach of contract and specific performance, the $100.00 award must be vacated. We have considered the issues brought forward by the appellees and find that the Court of Appeals ruled correctly on them.

For the reasons stated, the judgment of the trial court must be reinstated as modified herein.

The Court of Appeals opinion reversing the judgment of the superior court is reversed. The cause is remanded to the Court of Appeals for further remand to the trial court for further proceedings consistent with this opinion.

Reversed and remanded.