J.W. WALTON, Petitioner v. N.C. STATE TREASURER, RETIREMENT SYSTEMS DIVISION, Respondent

No. COA05-546

(Filed 21 February 2006)

**Administrative Law— untimely written order—nunc pro tunc**

A final agency decision is clearly required to be in writing and to include findings and conclusions under N.C.G.S. § 150B-36(d), and an administrative agency cannot enter a decision under Chapter 150B nunc pro tunc. In this case, concerning the computation of petitioner's retirement benefits, the Board of Trustees of the Local Government Employees' Retirement System informed

the parties of its vote but entered the written order beyond the sixty-day limitation "nunc pro tunc." That order was untimely and the Board is considered to have adopted the ALJ's recommended decision.

Appeal by petitioner from judgment entered 11 January 2005 by Judge W. Robert Bell in Mecklenburg County Superior Court. Heard in the Court of Appeals 23 January 2006.

*The Cummings Law Firm, P.A., by Humphrey S. Cummings, for petitioner-appellee.*

*Attorney General Roy Cooper, by Assistant Attorney General Robert M. Curran, for respondent-appellant.*

STEELMAN, Judge.

J.W. Walton was employed by the City of Charlotte (City) and was a member of the North Carolina Local Governmental Employees' Retirement System. In March 2002, the City informed him his position would be eliminated and he would lose his job. The parties entered into a settlement agreement whereby Walton agreed to terminate his employment "by retirement or otherwise" on or before 30 April 2003. The City agreed to pay him $60,000.00 within ten days of his termination, compensate him at his base rate of salary for a certain amount of unused sick and vacation leave, and pay $2,000.00 for legal expenses. Effective 1 May 2003, Walton retired and all sums were paid to him according to the agreement. The N.C. State Treasurer, Retirement System Division, determined the $60,000.00 payment should not be included as "compensation" in the computation of Walton's retirement benefits.

Walton filed a petition for a contested case hearing with the Office of Administrative Hearings. The administrative law judge (ALJ) issued a decision on 30 January 2004, concluding the $60,000.00 payment to Walton following his retirement was "compensation" and should be used in computing his average final compensation for retirement purposes. Respondent excepted to the ALJ's decision. The matter came before the Board of Trustees for the Local Governmental Employees' Retirement System (Board) at its next regularly scheduled meeting on 22 April 2004. The Board orally announced it was adopting the ALJ's decision in part and rejecting it in part. Specifically, it rejected the ALJ's holding that the $60,000.00 payment was compensation for retirement purposes.

Although the record is unclear, it appears respondent submitted a proposed draft of the final agency decision to the Chairman of the Board on 4 June 2004. The Chairman signed the final agency decision on 13 August 2004, *"nunc pro tunc* to 4 June 2004." Walton sought judicial review in Mecklenburg County Superior Court alleging the decision of the Board was not timely entered, and as a result, the ALJ's decision became the final decision. The trial court found that the Board had failed to render a final decision within sixty days as required by N.C. Gen. Stat. § 150B-44 and ordered that the ALJ's decision was the final decision in this matter. Respondent appeals.

In respondent's sole argument, it contends the trial court erred in concluding the Board did not render a final decision within the time required by N.C. Gen. Stat. § 150B-44 and ruling that the ALJ's decision became the final decision in the matter. We disagree.

On judicial review of an administrative agency's final decision, the substantive nature of each assignment of error controls the standard of review. *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 658, 599 S.E.2d 888, 894 (2004). Since respondent asserts the trial court improperly interpreted a statute and committed an error of law, we review this under a *de novo* standard of review. *Id.* at 659, 599 S.E.2d at 894. Under this standard, we consider the matter anew and may freely substitute our own judgment for that of the agency's judgment. *Id.* at 660, 599 S.E.2d at 895.

The Administrative Procedure Act (APA) prescribes the time in which an agency must make its final decision.

An agency that is subject to Article 3 of this Chapter and is a board or commission has 60 days from the day it receives the official record in a contested case from the Office of Administrative Hearings or 60 days after its next regularly scheduled meeting, whichever is longer, to make a final decision in the case. This time limit may be extended by the parties or, for good cause shown, by the agency for an additional period of up to 60 days. If an agency subject to Article 3 of this Chapter has not made a final decision within these time limits, the agency is considered to have adopted the administrative law judge's decision as the agency's final decision.

N.C. Gen. Stat. § 150B-44 (2005). The Board concedes it is an agency subject to Article 3 of the APA. Thus, it had sixty days from its 22 April 2004 regularly scheduled meeting to make its final decision.

**WALTON v. N.C. STATE TREASURER**

[176 N.C. App. 273 (2006)]

There was no extension of the sixty-day time period. Since the Board's written decision clearly fell outside of the sixty-day time period, the questions presented are: (1) whether the oral announcement on 22 April 2004 constituted a "final decision;" and, if not, (2) whether an administrative agency can make a decision "*nunc pro tunc*."

Respondent argues the Board "rendered" its decision when it orally announced it at the 22 April 2004 regularly scheduled meeting. This is incorrect. N.C. Gen. Stat. § 150B-36(b) provides that "a final decision in a contested case shall be made by the agency *in writing* after review of the official record . . . and shall include findings of fact and conclusions of law." (emphasis added). This statute does not discuss the "rendering" of a decision, but clearly requires that a final agency decision be in writing and include findings of fact and conclusions of law. Following the closed session of the Board's 22 April 2004 meeting, the Board merely informed the parties of its vote. It did not recite any findings of fact or conclusions of law. This oral announcement did not constitute a final decision as required by N.C. Gen. Stat. § 150B-36 and 150B-44. Further, our decision is consistent with this Court's previous interpretation of N.C. Gen. Stat. § 150B-44, stating: "[a] final decision is not made until it is in writing." *Occaneechi Band of the Saponi Nation v. N.C. Comm'n of Indian Affairs*, 145 N.C. App. 649, 656, 551 S.E.2d 535, 540 n.2 (2001)[1].

We now consider whether the Board's written decision signed 13 August 2004 "*nunc pro tunc* to 4 June 2004" was a final decision entered within the statutory time limit. There is no question the decision was signed outside of the sixty-day requirement of N.C. Gen. Stat. § 150B-44. The Board attempts to cure this patent defect by entering the final decision "*nunc pro tunc* to 4 June 2004."

> The power of a court to open, modify, or vacate the judgment rendered by it must be distinguished from the power of a court to amend records of its judgments by correcting mistakes or supplying omissions in it, and to apply such amendment retroactively by an entry nunc pro tunc. Nunc pro tunc is merely descriptive of the inherent power of the court to make its records speak the truth, to record that which was actually done, but omitted to be recorded. A nunc pro tunc order is a correcting order. The function of an entry nunc pro tunc is to correct the record to reflect a

---

1. Although the time limit referred to in *Occaneechi* has since been shortened from ninety to sixty days, the analysis in the case is still applicable.

prior ruling made in fact but defectively recorded. A nunc pro tunc order merely recites court actions previously taken, but not properly or adequately recorded. A court may rightfully exercise its power merely to amend or correct the record of the judgment, so as to make the courts record speak the truth or to show that which actually occurred, under circumstances which would not at all justify it in exercising its power to vacate the judgment. However, a nunc pro tunc entry may not be used to accomplish something which ought to have been done but was not done.

46 AM JUR 2D *Judgments* § 156 (2004). The power to enter an order *nunc pro tunc* is based upon the inherent power of a *court. See* BLACK'S LAW DICTIONARY 1100 (8th ed. 2004) (defining *"nunc pro tunc"* as "having a retroactive legal effect through a court's inherent power"). It has no application to an administrative agency. An administrative agency is part of the executive branch of government and its authority to enforce a final agency decision is only found in Chapter 150B of the General Statutes. *See Employment Security Comm. v. Peace*, 128 N.C. App. 1, 8-9, 493 S.E.2d 466, 471 (1997) (" 'Administrative agencies . . . are distinguished from courts. They are not constituent parts of the General Court of Justice,' " but are part of the executive branch) (citations omitted). Chapter 150B contains no authority for the entry of decisions *nunc pro tunc*, but rather contains specific provisions governing the entry of final agency decisions.

We hold that an administrative agency cannot enter a decision under Chapter 150B *"nunc pro tunc."* N.C. Gen. Stat. § 150B-44 is " 'intended to guard those involved in the administrative process from the inconvenience and uncertainty of unreasonable delay.' " *Gordon v. N.C. Dep't of Corr.*, 173 N.C. App. 22, 27, 618 S.E.2d 280, 285 (2005) (citations omitted). Based on this principle, this Court has held an agency subject to Article 3 is "without authority to unilaterally extend the deadline for issuing its final decision." *Occaneechi*, 145 N.C. App. at 656, 551 S.E.2d at 540. Under this rationale, the Board cannot circumvent the time requirements of the statute by filing a final decision *"nunc pro tunc"* that was clearly filed outside of the prescribed time for making a final decision. To allow the Board to do so would render the time requirements enacted by the legislature in N.C. Gen. Stat. § 150B-44 meaningless.

Chapter 150B provides two specific methods for an agency to extend the sixty-day time period for entry of a final decision: (1) by agreement of the parties, or (2) for good cause shown. N.C. Gen. Stat.

§ 150B-44. If the agency fails to make its final decision within these time limits, the statute is clear; "the agency is considered to have adopted the administrative law judge's decision as the agency's final decision." *Id.* The record reveals the parties did not stipulate to an extension, nor did the Board enter an order extending the time to file the decision for good cause shown. Therefore, respondent's argument is without merit.

For the reasons discussed herein, we hold the trial court correctly interpreted and applied N.C. Gen. Stat. § 150B-44. The trial court did not err in determining the Board had not entered its final decision within the time required. Therefore, the Board is considered to have adopted the ALJ'S recommended decision.

AFFIRMED.

Chief Judge MARTIN and Judge McGEE concur.