**WHITWORTH v. WHITWORTH**

[222 N.C. App. 771 (2012)]

———

MARIE WYATT WHITWORTH, Plaintiff v. RUBEN LEON WHITWORTH, Defendant

No. COA12-24

(Filed: 4 September 2012)

**Divorce—equitable distribution—motion to intervene— entered two years after resolution of case—void**

> The trial court lacked subject matter jurisdiction in an equitable distribution action to enter a 12 August 2010 *nunc pro tunc* order three years after the hearing on intervener's motion to intervene where the case itself had been over for almost two and a half years. The use of the phrase *"nunc pro tunc"* did not solve the jurisdictional problem. That order was, therefore, void and the trial court should have granted plaintiff's motion to set aside the order pursuant to N.C.G.S. § 1A-1, Rule 60(b)(4).

Appeal by plaintiff from order entered 11 October 2011 by Judge Jeanie R. Houston in Wilkes County District Court. Heard in the Court of Appeals 10 May 2012.

*Robinson & Lawing, L.L.P., by Kevin L. Miller, Michael L. Robinson, and H. Stephen Robinson; and The McElwee Firm, by William H. McElwee, III, for plaintiff-appellant.*

*No brief filed on behalf of defendant-appellee.*

*Sigmon, Clark, Mackie, Hanvey & Ferrell, PA, by Forrest A. Ferrell and R. Jason White, for intervenor-appellee.*

GEER, Judge.

Plaintiff Marie Wyatt Whitworth appeals from an order denying her motion pursuant to Rule 60 of the North Carolina Rules of Civil Procedure to set aside an order filed 12 August 2010 *nunc pro tunc* 14 August 2007 granting a motion to intervene. Also pending before this Court is Marie's appeal in related litigation from an order dismissing a superior court action. It appears that entry of the order at issue in this case was sought long after the conclusion of this district court proceeding in order to affect the superior court litigation. Likewise, it appears that the focus of the Rule 60 motion and this appeal is on the superior court litigation.

We resolve this appeal, however, based solely on the record before us and without regard to the second appeal. We hold that because the district court proceeding was concluded two and a half years before the intervention order was entered, the district court had no jurisdiction to enter the 12 August 2010 order *nunc pro tunc* to the original hearing date. The district court, therefore, erred by not granting the Rule 60 motion. Accordingly, we reverse the denial of the Rule 60 motion and vacate the 12 August 2010 order.

## Facts

Marie Wyatt Whitworth and Ruben Leon Whitworth separated on or about 23 May 2007. On 6 August 2007, Marie filed a complaint seeking equitable distribution, injunctive relief, and an interim distribution. With respect to equitable distribution, Marie alleged that part of her marital property was "a substantial interest in Window World, Inc." Marie and Leon were the sole record owners of Window World's stock. Leon served as CEO of Window World, while Leon and Marie's son, Todd Whitworth, was the company's President. Leon, Marie, and Todd were all directors of the corporation.

On the same day that Marie filed her complaint, she also filed a motion for a temporary restraining order ("TRO") and preliminary injunction, asserting that Leon, Todd, and Todd's wife, Tammy, had met with third parties to discuss the sale or transfer of Window World and had intentionally concealed this meeting from her. The trial court entered an order on 6 August 2007 granting a TRO that prohibited Leon, among other things, from: (1) transferring any marital asset; (2) competing directly or indirectly with Window World; (3) engaging in negotiations regarding a potential sale of Window World or any interest in Window World without notice to Marie's counsel and an opportunity for Marie's counsel to participate in the negotiations; (4) declaring a dividend; (5) purchasing or leasing an airplane without

written consent of Marie; (6) taking any action that resulted or had the potential to result in the removal of Marie as an officer and director of Window World or limited or impaired Marie's ability to function as an officer and director; (7) taking any action "that result[ed] in or ha[d] the potential to result in the diminution or dilution or elimination" of Marie's interest in Window World; and (8) taking any action that would cause Window World to incur indebtedness or expend any funds except in the ordinary course of business without written consent from Marie. The court set a hearing for 14 August 2007 on Marie's motion for a preliminary injunction.

On 8 August 2007, Window World moved to intervene in the equitable distribution action. In its motion, Window World asserted that the complaint "raises allegations directly related to Window World, Inc." and that "[t]he entry of the [TRO] and the entry of any preliminary or permanent injunction may as a practical matter impair and impede Window World, Inc.'s ability to carry on the daily business of the corporation, as well [as] impair and impede it's [sic] ability to protect its trademark, its business interests, and the interests of its licensees." The motion was noticed for hearing on 14 August 2007, the same day that the motion for a preliminary injunction was scheduled to be heard.

On 14 August 2007, during the hearing on the motion to intervene, Window World, represented by John G. "Jay" Vannoy, Jr., argued that resolution of the equitable distribution action between Marie and Leon would directly affect the day-to-day operation of the company to the point that the business would be impaired. Window World argued both intervention as a matter of right under Rule 24(a)(2) and permissive intervention under Rule 24(b). Marie's attorneys, William H. McElwee, III of the McElwee Firm, PLLC, and Jimmy H. Barnhill, of Womble Carlyle Sandridge & Rice, PLLC, opposed the motion to intervene, arguing that Leon could adequately represent the interests of Window World. Leon's attorneys, however, joined in the motion to intervene.

The trial judge, after hearing oral argument, announced:

> I don't see any way for the company not to be a part of this. It's just simply to pass their opinion as to whether it's going to affect the company or not. . . .

> . . . .

So Mr. Vannoy, if you'll do an Order for me—we'll get on to the Restraining Order today, but if you'll do an Order for you to intervene, I'll allow you to at least take part in what discussions I think you all were already in the middle of when I called you in here. Is that okay?

MR. VANNOY: Yes, I'll draw that Order.

Mr. Vannoy, however, apparently failed to draft this order.

On 29 October 2007, Marie's attorneys moved to withdraw as her counsel on the grounds that Marie had told them that she no longer desired that they represent her. On 6 November 2007, a consent order was entered. Window World was identified in the caption as an intervenor. Following the trial judge's signature on the order, Marie, Leon, and Window World (by Todd Whitworth as Window World's President) signed, indicating their consent to the order. Twenty-five minutes after the consent order was filed, the order allowing Marie's attorneys to withdraw was entered.

The consent order stated that "[a]ll the parties wish to enter this Consent Order to resolve all the issues, claims, and contentions pending between them that relate specifically to Window World, Inc." The order provided that Leon would give Marie 5,000 shares of Window World stock. Following that transfer, Marie and Leon would each give Todd 115 shares of stock. The order then provided that Marie and Leon "shall sign a Redemption Agreement whereby the Corporation will redeem all outstanding shares of Window World, Inc. stock owned by" Marie and Leon for compensation specifically set out in the order. Upon the execution of the Redemption Agreement, Marie and Leon were required to resign their positions as officers and directors of Window World. After additional provisions not pertinent here, the consent order provided that the order "shall resolve all pending issues, claims, and contentions of each party in 07 CVD 1179 which relate specifically to Window World, Inc."

On 24 January 2008, the trial court entered a consent order/ judgment finally resolving the parties' equitable distribution claims. At that point, Mr. Vannoy, who had been representing Window World, was now also representing Marie. The order expressly stated that "[t]his settles and resolves all claims raised by the pleadings."

Todd Whitworth died on 5 February 2010. On 22 June 2010, Marie requested her file from Mr. Vannoy and, on the same day, filed an action in superior court against (1) the estate of Todd Whitworth, (2)

Tammy Whitworth, both individually and as executor of Todd's estate, and (3) Window World, alleging breach of fiduciary duty, constructive fraud, fraud, rescission, breach of contract, conversion, and violation of the North Carolina RICO Act. She was represented in the superior court action by her present counsel, one of whom was originally counsel for her in this action.

On or about 21 June 2010, Leon also filed a claim against Todd's estate for monetary damages in the amount of $33,000,000.00 under the Redemption Agreement and $42,000,000.00 arising out of other transactions. Mr. Vannoy accepted service on behalf of the estate.

Defendants in the superior court action did not file an answer until 10 September 2010. In the meantime, on 12 August 2010, an order was filed in this action purportedly *nunc pro tunc* to 14 August 2007 allowing Window World's motion to intervene. According to Mr. Vannoy's testimony at the hearing below, he drafted the order, handed it up to the trial judge in a regular session of court, and asked her to sign and enter it. Mr. Vannoy acknowledged that prior to submitting the order to the trial judge, he did not provide a copy of it to Marie's or Leon's counsel. Mr. Vannoy also admitted that he did not serve Marie or Leon with a copy of the signed order.

The 12 August 2010 intervention order included a finding of fact that "Window World, Inc. is a closely held corporation owned in part by Leon, Marie, and Todd Whitworth." This finding of fact was contrary to findings in the 6 November 2007 consent order. The order also included the following conclusions of law:

1. This Court has jurisdiction over the subject matter and the parties to this action.

2. Window World, Inc. as Intervenor has an interest in the property which is the subject matter of this action.

3. The rights, obligations, and interests of Window World, Inc. will be impaired and impeded if it is not allowed to intervene in this action.

4. Since the parties to the underlying action are now adversaries, they cannot adequately represent the interests of Window World, Inc.

5. Window World, Inc. should be allowed to intervene as a matter of right in this matter.

On 10 September 2010, after this order was filed, defendants in the superior court action—Todd's estate, Tammy, and Window World—filed an answer asserting the defenses of res judicata and collateral estoppel based on the consent order in this action relating to Window World. Those defenses relied upon Window World's having been a party to the district court action.

On 21 January 2011, Marie filed a motion to set aside the 12 August 2010 intervention order pursuant to Rule 60 of the Rules of Civil Procedure. The motion alleged that Marie was unaware of who prepared or presented the order to the court and had attempted to ascertain this information, but had not received a response. The motion asserted that a draft of the order had not been provided to Marie's counsel and that the signed intervention order was not served on Marie or her counsel. According to the motion, Marie learned of the entry of the order only when it was included in defendants' document production in the superior court action.

The Rule 60 motion requested that the intervention order be vacated because the order was not properly entered pursuant to Rule 60(a) in that it did not merely correct an error in the record; the order was entered without prior notice to the parties and as a result of an *ex parte* contact with the trial court; the order was not a permissible exercise of the trial court's inherent power to control its proceedings; and entry of the order without notice to Marie violated her substantive and procedural due process rights. The motion further challenged the finding of fact that Window World was, as of 14 August 2007, owned in part by Todd.

Following a hearing on 9 August 2011 on the Rule 60 motion, the trial court entered an order on 11 October 2011 denying the motion. After concluding that the trial court had jurisdiction, the trial court found:

> 7. Jay Vannoy, Attorney for the Intervenor, prepared an Order allowing Window World, Inc.'s Motion to Intervene within a couple of weeks of the August 14 2007 hearing. A signed copy of the order was never properly filed; however, Jay Vannoy was allowed to participate and be a party to all of the proceedings and negotiations in the case. Neither any party nor attorney ever questioned or objected to this. On the contrary, Jay Vannoy was served as an Attorney of Record in all following actions.

The trial court then found that Mr. Vannoy as counsel for Window World had participated in negotiations in the case, that Window

World was served as an intervenor with Marie's counsel's motion to withdraw, and that the consent order entered on 6 November 2007 resolving all issues relating to Window World was signed by intervenor Window World. The court therefore found that Marie and Leon and their attorneys treated Window World as an intervenor since the hearing on 14 August 2007.

Based on its findings of fact, the trial court concluded first that it had "jurisdiction over the parties and the subject matter of this action." The court then concluded:

2. On August 14, 2007, the Court allowed Window World, Inc.'s Motion to Intervene in open court and instructed Jay Vannoy to draw the Order.

3. The doctrine of equitable estoppel is based on principles of fair play and essential justice. Equitable estoppel arises when one party tries to abruptly change their position from that of a preceding legal proceeding; thereby gaining an advantageous legal position against the other party. The party is barred or "estopped" from taking a different position in the case at hand than she did at an earlier time if the other party or parties would be harmed by the change. This situation also exists in the case at hand.

Based on the findings of fact and conclusions of law, the trial court denied Marie's Rule 60 motion to set aside the 12 August 2010 order. Marie timely appealed to this Court from that order.

### Discussion

Marie contends that the trial court lacked subject matter jurisdiction to enter the 12 August 2010 *nunc pro tunc* order three years after the hearing on Window World's motion to intervene, because the case itself had been over for almost two and a half years. We agree and hold that the trial court erred in concluding that it had jurisdiction to enter the 12 August 2010 order. The use of the phrase *"nunc pro tunc"* did not solve the jurisdictional problem.

*"Nunc pro tunc"* is defined as "now for then." *Black's Law Dictionary* 1174 (9th ed. 2009). It signifies " 'a thing is now done which should have been done on the specified date.' " *Id.* (quoting 35A C.J.S. *Federal Civil Procedure* § 370, at 556 (1960)).

*Nunc pro tunc* orders are allowed only when "a judgment has been actually rendered, or decree signed, but not entered on the record, in consequence of accident or mistake or the neglect of

the clerk . . . provided [that] the fact of its rendition is satisfactorily established and no intervening rights are prejudiced."

*Long v. Long*, 102 N.C. App. 18, 21-22, 401 S.E.2d 401, 403 (1991) (quoting *State Trust Co. v. Toms*, 244 N.C. 645, 650, 94 S.E.2d 806, 810 (1956)). *See also Rockingham Cnty. Dep't of Soc. Servs. v. Tate*, 202 N.C. App. 747, 751, 689 S.E.2d 913, 916 (2010) (holding that when no substantive ruling was made at hearing and written order was prepared long after hearing, "[e]ntry of the order *nunc pro tunc* does not correct the defect" because "[w]hat the court did not do then . . . cannot be done now . . . simply by use of these words"); *Hill v. Hill*, 105 N.C. App. 334, 340, 413 S.E.2d 570, 575 (1992) (holding that "like any other court order, an alimony order cannot be ordered (*nunc pro tunc*) to take effect on a date prior to the date actually entered, unless it was decreed or signed and not entered due to mistake and provided that no prejudice has arisen"), *rev'd on other grounds*, 335 N.C. 140, 435 S.E.2d 766 (1993).

In *Long*, the parties signed a separation agreement, including an alimony provision, on 2 April 1987. 102 N.C. App. at 20, 401 S.E.2d at 402. The defendant husband then filed for bankruptcy and was discharged on 4 February 1988 from all debts existing on 27 October 1987, including alimony. *Id.* at 20-21, 401 S.E.2d at 402. The plaintiff wife then sought specific performance of the alimony provision, and the defendant husband moved to dismiss the complaint. *Id.* at 20, 401 S.E.2d at 402. The hearing on the defendant husband's motion to dismiss occurred on 17 October 1988, but the court announced no ruling. *Id.* at 21, 401 S.E.2d at 402. A year and a half later, on 6 April 1990, an order was filed, granting the defendant husband's motion to dismiss *nunc pro tunc* 17 October 1988. *Id.*, 401 S.E.2d at 403.

This Court concluded on appeal that "[t]he trial court's attempt to enter the order *nunc pro tunc* to 17 October 1988 was ineffective" because the trial court did not announce its order in open court and, therefore, no decision had been rendered on that date. *Id.* at 21-22, 401 S.E.2d at 403. The Court further held that even if a decision had been rendered, nothing in the record indicated the delay in entering the written order was due to accident, mistake, or neglect by the clerk. *Id.* at 22, 401 S.E.2d at 403.

Therefore, before a court order or judgment may be ordered *nunc pro tunc* to take effect on a certain prior date, there must first be an order or judgment actually decreed or signed on that prior date. If such decreed or signed order or judgment is then not entered due

to accident, mistake, or neglect of the clerk, and provided that no prejudice has arisen, the order or judgment may be appropriately entered at a later date *nunc pro tunc* to the date when it was decreed or signed.

Here, any rendition in open court did not precisely set out the trial court's order on the motion to intervene. After generally noting the likely inability of Marie and Leon to agree on matters relating to Window World, the need for retired parents to allow children to run their company, and a desire not to bind Todd's hands, the court merely stated regarding the order that "if [Mr. Vannoy will] do an Order for [Window World] to intervene, I'll allow you to at least take part in what discussions I think you all were already in the middle of when I called you in here."

Thus, the trial court made no oral findings of fact, although the written order contained specific findings. Indeed, among the findings in the written order was a finding that Todd Whitworth was one of the owners of the company, a matter of significant dispute among the parties and one that was not resolved until entry of the consent order three months *after* the motion to intervene hearing.

Further, while Window World argued that it should be allowed to intervene either as a matter of right or permissively, the trial court did not state in open court on which basis it was allowing the intervention. Moreover, it is not apparent from that oral ruling the degree to which the court intended to allow Window World to participate in the proceedings. Orally, the trial court merely stated that it was going to allow the company to participate in the ongoing "discussions."

It is apparent that the trial court expected the details of the order granting intervention to be fleshed out in a written order. This nonspecific ruling is not a sufficient rendering to support the entry three years later of a detailed written order *nunc pro tunc*.

The 12 August 2010 order did not simply " 'correct the record to reflect a prior ruling made in fact but defectively recorded,' " and it did not " 'merely recite[] court actions previously taken, but not properly or adequately recorded.' " *Walton v. N.C. State Treasurer*, 176 N.C. App. 273, 276-77, 625 S.E.2d 883, 885 (2006) (quoting 46 Am. Jur. 2d *Judgments* § 156 (2004)). Instead, the written order essentially created an order with findings of fact and conclusions of law that had not previously existed. Yet, it is well established that " 'a nunc pro tunc entry may not be used to accomplish something which ought to

have been done but was not done.' " *Id.* at 277, 625 S.E.2d at 885 (quoting 46 Am. Jur. 2d *Judgments* § 156).

Further, the record contains no evidence and the trial court made no finding regarding why no written order was signed in 2007. It appears from Mr. Vannoy's testimony that he simply never got around to submitting the order to the trial judge for her signature. Window World has, therefore, failed to demonstrate that the 12 August 2010 order was properly entered *nunc pro tunc.*

Further, the trial court had no jurisdiction to enter an order on 12 August 2010 allowing the motion to intervene because the action had been concluded. As a general principle, "a court retains jurisdiction of a case until final disposition, but jurisdiction ceases with rendition of final judgment or decree except as to certain matters." 21 C.J.S. *Courts* § 99, at 103 (2006). Consequently, "after final judgment or decree has been rendered, and postjudgment motions have been resolved, . . . the jurisdiction of the court is exhausted, and it cannot take any further proceedings in the case." *Id. See also Lowe v. Bryant,* 55 N.C. App. 608, 612, 286 S.E.2d 652, 654 (1982) ("After the case was closed, the trial court had no authority to rule on the merits of the case."); *Collins v. Collins,* 18 N.C. App. 45, 50, 196 S.E.2d 282, 286 (1973) (holding that after a voluntary dismissal terminating a divorce action, "no valid order could be made thereafter in that cause").

Final disposition of a case is defined as " '[s]uch a conclusive determination of the subject-matter that after the award, judgment, or decision is made, nothing further remains to fix the rights and obligations of the parties, and no further controversy or litigation can arise thereon.' " *Whiteco Indus., Inc. v. Harrelson,* 111 N.C. App. 815, 818, 434 S.E.2d 229, 232 (1993) (quoting *Black's Law Dictionary* 630 (6th ed. 1990)). Our courts have further noted that "[i]t is also true that while a court loses jurisdiction over a cause after it renders a final decree, it retains jurisdiction to correct or enforce its judgment." *Wildcatt v. Smith,* 69 N.C. App. 1, 11, 316 S.E.2d 870, 877 (1984).

Here, the final disposition occurred on 24 January 2008 with the entry of the final equitable distribution consent order/judgment. That judgment specifically stated that it "settles and resolves all claims raised by the pleadings." No post-judgment motions were filed pursuant to Rule 59 or Rule 60, and no appeal occurred. The trial court was not enforcing the judgment or correcting a clerical mistake pursuant to Rule 60(a). In short, no jurisdictional basis existed for the trial court to enter the 12 August 2010 order granting the motion to

intervene. While Window World argues that a trial court may sign and enter a written order out of term under Rule 58 of the Rules of Civil Procedure, Window World cites no authority—and we have found none—that allows a court to enter an order allowing a motion to intervene two and a half years after the action was finally disposed of.

The legislature has, in some instances, authorized the exercise of "continuing jurisdiction," which is generally defined as " '[a] court's power to retain jurisdiction over a matter after entering a judgment, allowing the court to modify its previous rulings or orders.' " *Burgess v. Burgess*, 205 N.C. App. 325, 328, 698 S.E.2d 666, 669 (2010) (quoting *In re H.L.A.D.*, 184 N.C. App. 381, 387, 646 S.E.2d 425, 430 (2007), *aff'd per curiam*, 362 N.C. 170, 655 S.E.2d 712 (2008)). We have been unable to identify any authorization for "continuing jurisdiction" that would apply in this case. *See, e.g.*, N.C. Gen. Stat. § 6-19.1 (2011) (providing jurisdiction to trial court to grant attorney's fees for 30 days after final disposition); N.C. Gen. Stat. § 48A-14 (2011) (providing for continuing jurisdiction over trusts established in connection with contracts with minors); N.C. Gen. Stat. § 50A-202 (2011) (continuing jurisdiction in child custody cases).

In sum, we conclude that the trial court had no jurisdiction to enter the 12 August 2010 order. That order was, therefore, void and the trial court should have granted Marie's motion pursuant to Rule 60(b)(4) of the North Carolina Rules of Civil Procedure. Because we have concluded the order was void, we do not express any opinion on Marie's remaining arguments as to why the order should be set aside. We are, however, concerned about how the 12 August 2010 order came to be entered without prior notice to either Marie or Leon and without even service of the order after its signature.

Reversed and vacated.

Judges ELMORE and THIGPEN concur.