An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-814
NORTH CAROLINA COURT OF APPEALS

Filed: 1 April 2014


CLEON CURRIE, as Executor of the
Estate of Della Brown,
    Plaintiff,

    v.                              Caswell County
                                      No. 04 CVS 336
ISAAC POTEAT and wife, ROSETTA
POOLE POTEAT,
    Defendants,

    and

GEORGE B. DANIEL, P.A.,
    Intervenor Defendant.


Appeal by Plaintiff from order entered 28 May 2013 by Judge Michael Gentry in Caswell County Superior Court.[1] Heard in the Court of Appeals 8 January 2014.

---

[1] The underlying action from which this appeal is taken was in the superior court in Caswell County. The clerk of superior court referred the matter to Judge Michael Gentry, an elected judge of the district court in Caswell County, for a hearing pursuant to N.C. Gen. Stat. § 1C-1603(e)(7) (2013) ("If the judgment creditor objects to the schedule filed or claimed by the judgment debtor, the clerk [of superior court] must place the motion for hearing by the district court judge, without a jury, at the next civil session."). We also note that Plaintiff erroneously captioned his notice of *lis pendens* in a preceding and related case involving the same parties, 03 CVS 43, as being in the district court although that matter was also in the

*Carruthers & Roth, P.A., by Kenneth R. Keller, for Plaintiff.*

*No brief for Defendants.*

*George B. Daniel, P.A., by Amy Scott Galey, for Intervenor Defendant.*

STEPHENS, Judge.

*Procedural History and Factual Background*

Plaintiff Cleon Currie, in his capacity as Executor of the Estate of Della Brown, appeals from a 28 May 2013 order determining the relative priority as between a deed of trust obtained by Intervenor George B. Daniel, P.A., ("the law firm") from its clients, Defendants Isaac Poteat, Jr., and his wife, Rosetta Poole Poteat, and a judgment subsequently obtained against the Poteats by Currie on behalf of Brown's estate. The law firm obtained the deed of trust to secure its legal fees associated with the representation of the Poteats on a claim brought by Currie for, *inter alia*, conversion of funds to purchase the home on which the law firm took the deed of trust.

Della Brown died testate in March 2002. Her will named Currie, her great-nephew, as executor of her estate, file number

superior court. This apparent clerical error has no bearing on our resolution of this appeal.

02 E 213 ("the estate matter"). In July 2002, having found no property in Brown's name, Currie filed final account documents as to Brown's estate and was discharged as executor. Thereafter, Currie learned that, at a time when Currie believed Brown lacked mental capacity, Isaac Poteat had caused Brown to transfer $92,000 to the Poteats. Currie also learned that the Poteats had used $75,000 of that money to purchase a home in Yanceyville, North Carolina ("the home"). Currie hired attorney Powell W. Glidewell IV to pursue possible claims on behalf of Brown's estate, unaware that his signing of the final account as to her estate and his discharge as executor of the estate might affect his right to undertake such action.

In February 2003, Glidewell filed a complaint in the superior court in Caswell County on Currie's behalf asserting various claims against the Poteats, file number 03 CVS 43 ("the first case"). On 13 March 2003, Glidewell filed notice of *lis pendens*. The law firm represented the Poteats in that action. The case was set for trial in September 2004, and, at the pre-trial conference on 7 September 2004, the law firm advised the court and Glidewell of its contention that Currie's discharge as executor of Brown's estate constituted a fatal defect to his claims on Brown's behalf against the Poteats. Upon hearing the

law firm's contentions, Glidewell stated in open court his intention to dismiss the action without prejudice the following day so that Currie could be re-qualified as executor of Brown's estate, after which he would refile a complaint against the Poteats. The trial court announced in open court that the first case was voluntarily dismissed.[2]

On 8 September 2004, the Poteats, through the law firm, filed a deed of trust on the home to secure a promissory note to the law firm in the amount of $40,000. On the same day, a general warranty deed ("the Poteat deed") was filed, transferring a remainder interest in the home to the Poteats' daughters and retaining a life estate to the Poteats. On 22 September 2004, a series of filings occurred: (1) Currie signed an amended petition to reopen the estate matter, which he took to the clerk of superior court in Rockingham County; (2) the clerk filed the petition and order to re-open the estate matter, re-qualified Currie as executor, and issued letters testamentary; (3) Glidewell filed a written dismissal without prejudice of the first case; and (4) Glidewell filed a second

---

[2] A voluntary dismissal announced in open court becomes effective immediately and terminates all adversary proceedings in the case. *Walker Frames v. Shively*, 123 N.C. App. 643, 646, 473 S.E.2d 776, 778 (1996). Accordingly, as Currie and the law firm agree, the first case was dismissed on 7 September 2004.

civil action against the Poteats, file number 04 CVS 336 ("the second case"), and a second notice of *lis pendens*. The complaint in the second case was virtually identical to the first, except for updated references to the reissued letters testamentary.

The second case was tried in September 2005 and the jury returned a verdict that Currie, on behalf of the Brown estate, was entitled to recover $75,000 from the Poteats for constructive fraud and conversion. The Poteats appealed, and this Court affirmed that judgment in an unpublished opinion, *Currie v. Poteat*, 185 N.C. App. 158 (2007), *available at* 2007 N.C. App. LEXIS 1757. However, execution of the judgment was returned unsatisfied.

Thereafter, Currie learned of the Poteat deed and filed an action seeking to set aside that conveyance as fraudulent, file number 08 CVS 320 ("the third case"). On 7 July 2009, the superior court entered a default judgment in favor of Currie, setting aside the Poteat deed and declaring it void *ab initio*.

In August 2009, Isaac Poteat filed a motion to claim exempt property which listed, *inter alia*, the lien owed to the law firm. Currie objected, and, on 21 August 2009, the trial court set aside the order designating exempt property and set the

matter for hearing. The law firm intervened in the third case and, on 15 October 2009, filed an answer that asserted various defenses, each based upon its assertion that Currie had lacked standing to file the notice of *lis pendens* in the first case because he had been discharged as executor of Brown's estate at the time. The answer did not claim any defect in service of the notice of *lis pendens* in the first case.

On 11 December 2009, Currie filed a petition in the estate matter to date his requalification as executor *nunc pro tunc* to 2 April 2002. The clerk of superior court allowed the petition on 14 January 2010. The law firm appealed to superior court, and after hearing arguments, on 22 April 2010, the superior court filed an order affirming the clerk's order allowing the petition to date Currie's requalification as executor *nunc pro tunc* to 2 April 2002 ("the *nunc pro tunc* order"). The law firm did not appeal from that order, and the time in which it could do so has passed.

In November 2012, the clerk of superior court referred the matter to the district court in Caswell County for determination of the relative priorities of the judgment Currie had obtained in the second case and the deed of trust held by the law firm. *See* N.C. Gen. Stat. § 1C-1603(e)(7).

On 26 May 2013 *nunc pro tunc* to 27 November 2012, the court entered an "Order Determining Priority of Liens" which declared that the law firm's deed of trust had priority over Currie's judgment against the Poteats. In the order, the court concluded that: (1) because the first case was voluntarily dismissed on 7 September 2004 and the deed of trust was recorded the following day, the law firm was not a purchaser *pendente lite*[3]; (2) although a complaint can serve as a notice of *lis pendens*, because the first case had been dismissed at the time the deed of trust was recorded, the complaint in that case became a nullity which could no longer serve as notice of *lis pendens*; and (3) because "Currie did not follow his [n]otice of [*l*]*is* [*p*]*endens* with either the first publication of notice of the summons, or by an affidavit therefor[e] pursuant to Rule 4(j)(1)c of the Rules of Civil Procedure, or by personal service on the defendant within 60 days after the cross-indexing, as required by [N.C. Gen Stat. §] 1-110(a)," the notice of *lis pendens* in the first case "was void." (Italics added). From that order, Currie appeals.

*Discussion*

---

[3] "One who buys an interest in something that is the subject of a pending lawsuit." Black's Law Dictionary 1271 (8th ed. 2004).

On appeal, Currie argues that (1) the *lis pendens* filed in the first case was sufficient to constitute legal notice of Currie's claims on the home at the time the law firm obtained its deed of trust and, (2) even if the notice of *lis pendens* in the first case was not effective, the law firm had actual notice of pending litigation affecting the home such that the law firm took the deed of trust subject to the judgment subsequently rendered. We are constrained to disagree.

*I. Standard of Review*

"The standard of review on appeal from a judgment entered after a non-jury trial is whether there is competent evidence to support the trial court's findings of fact and whether the findings support the conclusions of law and ensuing judgment." *Cartin v. Harrison*, 151 N.C. App. 697, 699, 567 S.E.2d 174, 176 (citation and internal quotation marks omitted), *disc. review denied*, 356 N.C. 434, 572 S.E.2d 428 (2002). "[F]indings of fact made by the trial judge are conclusive on appeal if supported by competent evidence, even if there is evidence to the contrary." *Sisk v. Transylvania Cmty. Hosp., Inc.*, 364 N.C. 172, 179, 695 S.E.2d 429, 434 (citation, internal quotation marks, and ellipsis omitted), *reh'ing denied*, 364 N.C. 442, 702 S.E.2d 65 (2010). "Conclusions of law drawn by the trial court

from its findings of fact are reviewable *de novo* on appeal." *Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 517, 597 S.E.2d 717, 721 (2004).

*II. Notice of lis pendens in the first case*

In arguing that the notice of *lis pendens* in the first case was effective on 8 September 2004 when the deed of trust was recorded, Currie asserts that (1) his discharge as executor of Brown's estate before the filing of the first case was cured when the clerk of superior court re-qualified him *nunc pro tunc* to the date of his initial qualification, (2) the method of service of the notice of *lis pendens* was statutorily sufficient, and (3) because the first case was dismissed without prejudice, the second case was a continuation of the first case.

*A. The nunc pro tunc order in the estate matter*

We agree with Currie's contention that the *nunc pro tunc* order was effective to cure Currie's discharge as executor of Brown's estate and reject the law firm's arguments to the contrary as impermissible collateral attacks on the *nunc pro tunc* order in the estate matter.

> A collateral attack is one in which a plaintiff is not entitled to the relief demanded in the complaint unless the judgment in another action is adjudicated invalid. A collateral attack on a judicial proceeding is an attempt to avoid, defeat,

> or evade it, or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it. North Carolina does not allow collateral attacks on judgments.

*Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 601, 646 S.E.2d 826, 830 (2007).

"*Nunc pro tunc* is defined as now for then. It signifies a thing is now done which should have been done on the specified date." *Whitworth v. Whitworth*, __ N.C. App. __, __, 731 S.E.2d 707, 712 (2012) (citations and internal quotation marks omitted) (unpublished opinion), *available at* 2012 N.C. App. LEXIS 1077. The law firm cites *Whitworth* in support of its argument that entry of the *nunc pro tunc* order was erroneous:

> *Nunc pro tunc* orders are allowed only when [1] a judgment has been actually rendered, or decree signed, but not entered on the record, [2] in consequence of accident or mistake or the neglect of the clerk provided that the fact of its rendition is satisfactorily established and [3] no intervening rights are prejudiced.

*Id.* at 712-13 (citations, internal quotation marks, and ellipsis omitted). The law firm argues that the second two requirements for entry of the requalification order *nunc pro tunc* were not present in the estate matter.

We note that, although the law firm intervened in the estate matter and appealed the clerk's order to the superior

court, the law firm chose *not* to appeal from the *nunc pro tunc* order and, therefore, the validity of that order is not before this Court. Accordingly, in resolving this appeal, we will not consider arguments regarding the invalidity of an order in the estate matter. *Pinewood Homes, Inc.*, 184 N.C. App. at 601, 646 S.E.2d at 830.

We agree that the *nunc pro tunc* order cured Currie's discharge such that he had standing to file the complaint and notice of *lis pendens* in the first case. However, we do not consider the sufficiency of service of the notice of *lis pendens* because, at the time the law firm recorded its deed of trust, there was no pending action affecting the title to real property. Our General Statutes providing for constructive notice of pending litigation via notice of *lis pendens* are inapplicable in such circumstances.

> The firmly-established doctrine of *lis pendens* is that: When a person buys property pending an action of which he has notice, actual or presumed, in which the title to it is in issue, from one of the parties to the action, he is bound by the judgment in the action, just as the party from whom he bought would have been.

*Hill v. Pinelawn Mem. Park*, 304 N.C. 159, 163-64, 282 S.E.2d 779, 782 (1981) (citation and internal quotation marks omitted; italics added). Our General Statutes provide a scheme for

giving notice of *lis pendens*. *See* N.C. Gen. Stat. § 1-116 *et seq.* (2013). However,

> *lis pendens* notice under our statute is not exclusive. It serves only to provide constructive notice of pending litigation. . . . The *lis pendens* statutes enable a purchaser for a valuable consideration *who has no actual notice* of the pendency of litigation affecting the title to the land to proceed with assurance when the *lis pendens* docket does not disclose a cross-indexed notice disclosing the pendency of such an action.
>
> Our registration statute does not protect all purchasers, but only innocent purchasers for value. While actual notice of another unrecorded conveyance does not preclude the status of innocent purchaser for value, actual notice of pending litigation affecting title to the property does preclude such status. *Where a purchaser claims protection under our registration laws, he has the burden of proving by a preponderance of the evidence that he is an innocent purchaser for value, i.e., that he paid valuable consideration and that he had no actual notice, or constructive notice by reason of lis pendens, of pending litigation affecting title to the property.*

*Hill*, 304 N.C. at 164-65, 282 S.E.2d at 783 (citations and internal quotation marks omitted; italics and some emphasis added).

Voluntary dismissals are covered by Rule 41(a) of our Rules of Civil Procedure. N.C. Gen. Stat. § 1A-1, Rule 41(a) (2013).

> The effect of a judgment of voluntary dismissal is to leave the plaintiff exactly where he or she was before the action was commenced. After a plaintiff takes a Rule 41(a) dismissal, there is nothing the defendant can do to fan the ashes of that action into life, and the court has no role to play. . . . [O]nce a party voluntarily dismisses its action pursuant to . . . Rule 41(a)(1)[], it is as if the suit had never been filed[.]

*Hous. Auth. v. Sparks Eng'g, PLLC*, 212 N.C. App. 184, 187, 711 S.E.2d 180, 182 (2011) (citations, internal quotation marks, and some brackets omitted). In sum, "a voluntary dismissal . . . terminate[s] the action, and no suit is pending thereafter on which the court can enter a valid order." *Renner v. Hawk*, 125 N.C. App. 483, 489, 481 S.E.2d 370, 373, *disc. review denied*, 346 N.C. 283, 487 S.E.2d 553 (1997).

Here, it is undisputed that the law firm, which represented the Poteats in the first case (in addition to later litigation), had actual notice of the claims Currie asserted in that case which affected title to the home. Further, the law firm was present at the pretrial conference on 7 September 2004 where the matter of Currie's standing to bring the first case was questioned and Currie, through counsel, stated his intent to take a voluntary dismissal to reopen Brown's estate and be re-qualified as executor so that he could refile the case.

Unquestionably, then, the law firm had actual notice of Currie's claims, his need to voluntarily dismiss the first case, his plan to cure the matter of his discharge as executor, and his intent to refile the case asserting the same claims.  However, as noted *supra*, the voluntary dismissal was effective when announced in open court on 7 September 2004, and Currie did not initiate the second case until the complaint was filed on 22 September 2004.

Thus, on 8 September 2004, as the law firm well knew, *there was no litigation pending that affected title to the home*.  For this reason, the doctrine of *lis pendens*, whether by actual notice or by constructive notice via a notice of *lis pendens*, was inapplicable.  Currie's citations to numerous cases involving actual notice of pending litigation are unavailing because the law firm's "actual notice" here was only of Currie's *intent* to file a new complaint.  In simple terms, *there was no pending litigation for any party to have notice of on 8 September 2004*, and actual or constructive notice of *an intention* to bring litigation is of no legal effect in real estate transactions.

Currie cites *Goodson v. Lehmon*, 225 N.C. 514, 35 S.E.2d 623 (1945), for the proposition that a notice of *lis pendens* filed in the original case remains effective if the initial proceeding

is voluntarily dismissed without prejudice and a second proceeding is then filed on substantially the same claims. In that case, the appellees first brought an action in 1943 against certain of the appellants to set aside a deed to real property on the ground of mental incompetency of the grantor and duress and undue influence on the part of the grantees. *Id.* at 515, 35 S.E.2d at 623. In addition to their complaint, the appellees filed a separate notice of *lis pendens*. *Id.* The appellees prevailed at trial, but on appeal, our Supreme Court reversed. *Id.* at 515, 35 S.E.2d at 623-24 (citing *Goodson v. Lehmon*, 224 N.C. 616, 31 S.E.2d 756 (1944)).

> The opinion was certified to the Superior Court of Catawba County, and appears to have been received there on or about 5 December[] 1944. . . . [J]udgment in accordance with the opinion was rendered and entered in the Superior Court 15 January[] 1945. Meantime, on 5 December[] 1944, the [appellants], holding under the [original] deed, conveyed the lands to [various other parties ("defendants")] in separate lots."

> On 15 January[] 1945, the [appellees] began a new proceeding . . . upon the same cause of action, seeking the same relief. . . . [but also alleging] that the defendants purchased *pendente lite*, setting up the notice of *lis pendens* as part of the complaint, and that each of them had not only constructive notice given by the *lis pendens* on file, but actual notice of the rights and equities of the plaintiffs respecting the lands.

> The defendants demurred to the complaint as not stating a cause of action for that, it is contended, it appears upon the face of the pleading that at the time defendants took title, *lis pendens* was not in force, as the judgment of reversal in this Court was final, ending the case, and with it the effectiveness of notice of *lis pendens*, and giving them the status of innocent purchasers without notice; or, if the suit did not end then, it necessarily terminated on 15 January, with a like effect, making valid the deeds they had already taken, notwithstanding the original notice of *lis pendens*.

*Id.* at 516, 35 S.E.2d at 624. Our Supreme Court noted that "[t]he judgment of reversal was not final until its entry in the Superior Court on 15 January [1944]. [The defendants] were therefore, at the time they acquired title, purchasers *pendente lite*." *Id.* at 518, 35 S.E.2d at 625. The Court then held that, "where there is identity between the causes of action, and a procedural continuity arising out of the legal right to renew the litigation on the merits, the original *lis pendens* will be effective in the 'new action,' *where the defendants were pendente lite purchasers in the original proceeding*." *Id.* (emphasis in original).

Here, in contrast, as discussed *supra*, the deed of trust was filed in the window between the voluntary dismissal of the first case and initiation of the second case, a time when there

was no pending action.  Accordingly, unlike the defendants in *Goodson*, the law firm was *not* a purchaser *pendente lite*, and we must affirm the order of the trial court.

AFFIRMED.

Judges STEELMAN and DAVIS concur.

Report per Rule 30(e).