STROUD, Judge.
 

 *261
 
 Although this case began on or about 31 July 2008 and several interlocutory orders have been entered since its inception, the first orders for which James Gregory Spears ("defendant") had a right of immediate appeal were entered on 27 May 2014. These orders held defendant in civil contempt for his continuing failure to pay more than his entire disposable income each month towards his obligations of payment of credit card debt, child support, alimony, and attorneys'
 

 *488
 
 fees, ordered his imprisonment, and required him to pay an additional $900.00 per month over and above the established obligations for an indefinite time in order to purge himself of contempt. Defendant appeals from these orders, and we vacate.
 

 *262
 
 I. Background
 

 Julie Spears ("plaintiff") and defendant married in 1991 and three children were born to the marriage. They separated on or about 1 January 2008, and plaintiff filed a complaint seeking child custody, child support, post-separation support, alimony, attorneys' fees, and equitable distribution on or about 31 July 2008. The parties were divorced on 15 October 2008.
 
 [1]
 
 On or about 12 December 2008, defendant filed his answer and counterclaims for child custody and equitable distribution. On 19 December 2008, defendant remarried to his second wife.
 

 The procedural history of this case is extremely complex due to the repeated pattern of entry of orders many months after the hearings upon which they were based and changes in circumstances during the long lapses in time between hearings and entry of orders, which has resulted in the situation presented, in which there still is not a final order addressing all of the parties' obligations as to equitable distribution, alimony, and child support. Nor has defendant ever been able to have a court hear his claims for modification of his support obligations based upon his allegations of substantial changes of circumstances, since no final order has been entered which he could move to modify or which the court could modify. In this appeal, we are trying to hit a moving target.
 

 On 16 December 2008, the trial court held a hearing upon plaintiff's claims for post-separation support, temporary child support, and attorneys' fees. On or about 10 February 2009, the trial court entered a temporary support order based upon the December 2008 hearing. The trial court found that defendant was employed by the United States Army and had an average gross monthly income of $7,339.00. Plaintiff was not employed outside of the home although she was seeking employment. The trial court found that defendant's reasonable needs and expenses were $2,500.00 per month. Based on the North Carolina Child Support Guidelines, the trial court ordered defendant to pay child support of $1,561.00 per month beginning 15 December 2008 and to continue to provide medical insurance for the children. The trial court also ordered defendant to pay post-separation support of $1,800.00 per month beginning 1 December 2008 as well as $2,500.00 in attorneys' fees to plaintiff's counsel. In addition, defendant was ordered to make timely payments on several credit cards, for which he would be given "appropriate credit" upon resolution of the equitable distribution claims.
 

 *263
 
 On or about 22 May 2009, plaintiff filed a motion to hold defendant in contempt for failure to pay the full amounts of child support and post-separation support required under the temporary support order. The trial court entered an order on 16 September 2009 holding defendant in civil contempt for his failure to comply with the temporary support order. In addition to the ongoing temporary child support and post-separation support, the trial court ordered defendant to pay $9,000.00 for post-separation support arrears, at the rate of $500.00 per month starting 15 September 2009 and continuing until paid in full. He was also ordered to pay plaintiff's attorneys' fees in the amount of $6,650.00 with the terms of payment to be "deferred until equitable distribution."
 

 On or about 20 December 2009, defendant filed a motion to stay proceedings because he had been stationed in Afghanistan on or about 11 August 2009 for a period of one year. Although our record does not reveal the trial court's ruling, if any, upon the motion to stay, no additional court proceedings occurred until December 2011.
 

 A. Defendant's Obligations under the February 2013 Order
 

 On 12 and 13 December 2011, the trial court heard the matters of equitable distribution, alimony, child custody, child support, and attorneys' fees. Ultimately, the
 
 *489
 
 trial court signed an order as a result of this hearing on or about 31 January 2013,
 
 nunc pro tunc
 
 to 18 May 2012,
 
 [2]
 
 which was filed and entered on 4 February 2013 ("the February 2013 Order").
 

 In the February 2013 Order, the trial court found that defendant's gross monthly income from the United States Army was $10,561.02. He had financial responsibility for three other children born to his second wife of $1,046.88 per month. Based on the North Carolina Child Support Guidelines, the trial court ordered defendant to pay $1,880.48 per month in child support, effective as of 1 March 2009, the first day of the first
 
 *264
 
 month after entry of the temporary support order. Because the prior temporary support order established a monthly child support obligation of $1,561.00 and the February 2013 Order made the increase in defendant's monthly child support obligation retroactive, the February 2013 Order also established defendant's arrears of child support from 1 March 2009 through January 2013 as $15,015.56, or ($1,880.48-$1,561.00) x 47 months, and the trial court ordered defendant to pay this in full on or before 15 April 2014. The trial court also ordered defendant to continue to provide medical and dental insurance for the children.
 

 As to the alimony obligation, the trial court found that defendant had shared expenses of $900.00 per month and individual expenses of $1,149.47 per month. After payment of all of his expenses, child support obligation, and debt assigned to him in equitable distribution, the trial court found that defendant had "in excess of $2,500 net per month in surplus income." The trial court also found that plaintiff had a monthly deficit of over $4,000.00, based upon her expenses, income, and payment of debt assigned to her in equitable distribution. The trial court ordered defendant to pay alimony in the amount of $2,500.00 per month from 1 January 2012 through December 2013, $1,750 per month from January 2014 through December 2015, and $1,250.00 per month from January 2016 until terminated by a "statutorily-terminating event." The order established defendant's alimony arrears from 1 January 2012 through January 2013 as $9,100.00 and ordered that defendant pay this sum within sixty days of entry of the order.
 
 [3]
 

 The February 2013 Order also included equitable distribution and allocated certain marital credit card debts to defendant to be paid in the amount of $1,250.00 per month. The parties did not have any significant liquid marital assets, so the trial court did not distribute any accounts or other sources of cash that were large enough to serve as a source of payment for the various obligations owed by defendant. The trial court also ordered that defendant pay a distributive award of $21,000.00 to plaintiff at the rate of $875.00 per month beginning 1 January 2014. In addition, the trial court ordered that defendant pay $23,150.00 in attorneys' fees at the rate of $250.00 per month beginning 15 February 2013 and an additional $1,000.00 in attorneys' fees to be paid within sixty days of entry of the order.
 
 [4]
 

 *265
 
 Both parties filed post-trial motions after entry of the February 2013 Order. On or about 22 February 2013, plaintiff filed a motion requesting a new trial "solely to address the military Reserve Component Survivor Benefit Plan[.]" On or about 22 February 2013, defendant filed motions under North Carolina Rules of Civil Procedure 52 and 59
 
 *490
 
 to amend the findings of fact and for a new trial.
 
 See
 
 N.C. Gen.Stat. § 1A-1, Rules 52, 59 (2013). Defendant's motion included allegations that during the fourteen-month delay between the trial and entry of the order, his income and financial situation had changed significantly, but that he was unable to file a motion to modify because the change in his financial circumstances occurred before entry of the February 2013 Order.
 

 On 18 April 2013, plaintiff filed a motion for contempt alleging that defendant had failed to pay various sums he was ordered to pay, including the $9,100.00 alimony arrears due by 5 April 2013 and $5,831.15 in additional arrears based upon his partial payments of the obligations for child support, credit card debt, alimony, and attorneys' fees, with total arrears of $14,931.15 alleged. Plaintiff also sought attorneys' fees arising from her motion for contempt.
 

 Although the court did not
 
 enter
 
 orders addressing plaintiff's and defendant's post-trial motions until about 7 August 2013, according to those orders, the trial court apparently announced its decision to deny defendant's post-trial motions and to grant plaintiff's post-trial motion at a hearing on 26 April 2013. On or about 26 July 2013, based upon this announcement, defendant filed a motion to modify alimony and child support alleging a reduction in his income due to a change in his military assignment.
 
 [5]
 
 Specifically, at the time of the trial in December 2011, defendant was stationed in South Korea and received various allowances based on that assignment so that his gross income was about $10,700.00 per month. In August 2012, defendant was reassigned to South Carolina and his income was reduced to about $9,200.00 per month, which increased to about $9,490.00 per month as of January 2013. He also alleged that from this amount, he had mandatory deductions for housing and taxes, leaving him with a net monthly income of $5,420.00, although the order required him to pay a total of $6,755.00 per month, or $1,335.00 more than his monthly net income.
 

 On or about 26 July 2013 and 27 November 2013, plaintiff filed "supplemental" motions for contempt updating the amounts of arrears which
 
 *266
 
 she claimed defendant had failed to pay. On or about 7 August 2013, the trial court entered an order granting plaintiff's post-trial motion.
 
 [6]
 
 THE TRIAL COURT ORdered a new trial to address issues concerning "any survivor benefit plan(s) relating to [defendant's] military retirement benefits" and ordered that the February 2013 Order "should be amended after such new trial" to address these issues. According to our record, a final amended order has not yet been entered.
 

 Also on or about 7 August 2013, the trial court entered its order denying defendant's post-trial motions finding that he was not "without a remedy" because
 

 this Court believes that North Carolina law would permit him to move to modify his alimony and child support obligations based on alleged changes in circumstances that occurred between the time this Court issued its letter ruling on May 18, 2012, and the time this Court entered the Judgment on February 4, 2013. This Court does not now address whether such alleged changes in circumstances would warrant modifying any of Defendant/Husband's obligations, however, as such issue would have to be resolved in connection with a motion to modify.
 

 But defendant alleged that the reduction in his income occurred after the December 2011 trial and
 
 before
 
 the entry of the February 2013 Order; thus, a motion to modify is not a proper "remedy[.]"
 
 See
 

 Head v. Mosier,
 

 197 N.C.App. 328
 
 , 333,
 
 677 S.E.2d 191
 
 , 195 (2009) (holding that for a court to modify a child support order, it must first "determine whether there has been a substantial change in circumstances since the date the existing child support order was
 
 entered
 
 ") (emphasis
 
 *491
 
 added). As noted above, defendant filed such a motion to modify on or about 26 July 2013, based upon the trial court's belief that this would be a proper remedy. According to our record, the trial court has not yet heard the motion.
 
 [7]
 

 *267
 
 B. Contempt Order and Order on Purge Condition Noncompliance
 

 On 2 December 2013, the trial court held a hearing on plaintiff's contempt motions and a show cause order issued as a result of those motions.
 
 [8]
 
 The order from this hearing ("the Contempt Order") was not entered until nearly six months later, on 27 May 2014, and since there were additional proceedings between 2 December 2013 and 27 May 2014 which influenced that order, we will address those proceedings before noting the provisions of the ultimate 27 May 2014 Contempt Order.
 

 The trial court held another hearing on 22 January 2014, which was referred to as a "review hearing" to assess defendant's compliance with certain "purge conditions, including any and all efforts he has made to free-up the $900.00 [per month] in additional funds." On 22 January 2014, the trial court ordered defendant to be incarcerated for civil contempt until such time as he paid $5,369.70. Defendant's parents paid this sum, defendant was released from the custody of the Mecklenburg County Sheriff's Office, and this amount was remitted to plaintiff. In addition to the incarceration and payment of $5,369.70, the trial court entered another order ("the Order on Purge Condition Noncompliance") based upon the 22 January 2014 hearing, filed on 27 May 2014, which states that on 2 December 2013, the trial court had rendered its decision
 

 holding Defendant/Husband in civil contempt of the February 2013 Order, sentencing him to imprisonment for so long as such contempt continued, and suspending the sentence of imprisonment conditioned upon his compliance with the following purge conditions:
 

 a. Defendant/Husband shall immediately begin paying at least $900.00 more per month to Plaintiff/Wife over and above his total monthly obligations due under the February 2013 Order, and
 

 b. Defendant/Husband's efforts in this regard must include, at the very least, downwardly adjusting the
 
 *268
 
 federal income taxes being withheld from his gross monthly income.
 

 In the Order on Purge Condition Noncompliance, the trial court further found:
 

 4. Defendant/Husband's counsel objected to this Court conducting the compliance hearing on January 22, 2014, given that an Order had not yet been entered as a result of the December 2, 2013 contempt hearing. The Court overruled such objection.
 

 ....
 

 9. With respect to the second purge condition, Defendant/Husband downwardly adjusted the federal income taxes being withheld from his gross monthly income.
 

 10. However, Defendant/Husband did not consult any tax professional to ascertain whether he downwardly adjusted such income tax withholdings to the greatest extent possible.
 

 *492
 
 11. Nor does Defendant/Husband know whether he can further reduce such withholdings.
 

 12. By not bringing to the hearing documentation regarding his research and attempts to reduce his income tax withholdings, Defendant/Husband has left this Court without the ability to make a satisfactory determination as to what additional amount he could receive in net monthly income.
 

 13. Defendant/Husband's attempts to reduce expenses regarding the beach house he co-owns with his current wife likewise are unsatisfactory, and they display an unacceptable disrespect for his children with Plaintiff/Wife, Plaintiff/Wife, the law, and this Court.
 

 14. In sum, Defendant/Husband has failed to comply with the purge conditions set by this Court.
 

 On 27 May 2014, the trial court entered the Contempt Order as a result of the 2 December 2013 hearing. In this order, the trial court made the following pertinent findings of fact:
 

 16. The total amount Defendant/Husband paid to Plaintiff/Wife from February 2013 through July 2013 was (a)
 

 *269
 
 $3,670.80 less than his total monthly court-ordered obligations for during such time period; and (b) $12,770.80 less than all of his court-ordered obligations during such time period given the $9,100.00 alimony arrearage payment due and owing on or before April 5, 2013.
 

 17. Defendant/Husband knew at all material times about his payment obligations set forth in the February 2013 Order.
 

 18. Defendant/Husband willfully failed to comply with the February 2013 Order from February 2013 through July 2013, in that he had the ability to either (a) pay more towards his court-ordered obligations during such time period; or (b) take reasonable measures to enable him to pay more towards his court-ordered obligations during such time period, yet deliberately did not do so.
 

 19. This is so based on the following circumstances that existed or occurred during such time period;
 

 a. Defendant/Husband received $9,491.30 in gross monthly income from the U.S. Army, $1,965.00 of which comprised a housing allotment.
 

 b. The U.S. Army automatically withheld such allotment from Defendant/Husband's gross monthly income to cover housing for himself, his current wife, and their four (4) minor children.
 

 c. Defendant/Husband's net monthly income totaled $5,352.76 after deducting the following from his gross monthly income: (i) non-discretionary withholdings for federal income taxes ($1,110.88), social security taxes ($451.59), Medicare taxes ($105.61), state taxes ($440.00), and the aforementioned housing allotment ($1,965.00); and (ii) discretionary withholdings for life insurance ($27.00) and dental insurance ($6.50).
 

 d. Defendant/Husband paid less than $5,352.76 per month to Plaintiff/Wife in February ($1,748. 20 less), March ($853.12 less), April ($267.00 less), June ($793.34 less), and July ($793.32 less).
 

 e. Defendant/Husband and his current wife paid roughly $600.00 per month to service debt owed to his
 
 *270
 
 parents for a beach house in North Carolina, which his current wife and their children visit no more than three times per year.
 

 f. Defendant/Husband and his current wife did not discuss the possibility of selling the beach house to generate income and reduce expenses in an effort to meet his court-ordered obligations.
 

 g. Defendant/Husband received a federal income tax refund of $8,903.00 for tax year 2012, all of which was attributable to his income.
 

 f. Defendant/Husband remitted less than one-half of such refund to Plaintiff/Wife because, according to him, his current wife was entitled to one-half of such refund notwithstanding that the entire refund was attributable to his income.
 

 i. Defendant/Husband could have reduced his federal income tax withholdings by approximately $740.00 per month given the size of the refund for
 
 *493
 
 tax year 2012 ($8,903.00 ÷ 12 months = $741.91), but he did not do so.
 

 20. As of December 2, 2013, Defendant/Husband's gross monthly income from the U.S. Army was the same as that recited above.
 

 21. As of December 2, 2013, Defendant/Husband and his current wife were still paying approximately $600.00 per month to service debt owed to his parents for the North Carolina beach house.
 

 22. Defendant/Husband reduced his current family's net monthly income by approximately $600.00 per month by participating in the decision to purchase the beach house and service the debt related thereto.
 

 23. Paying $600.00 per month to service the debt on the beach house from February 2013 through July 2013 amounts to $3,600.00 ($600.00 x 6 months = $3,600.00). If such payments had instead been applied to Defendant/Husband's total monthly obligations under the February 2013 Order for such time period, his arrearage concerning such obligations would be $70.80, rather than $3,670.80.
 

 *271
 
 24. Defendant/Husband's failure to (a) consider the possibility of having a discussion with his current wife regarding selling the beach house; (b) engage in such a discussion; and (c) state anything other than he could not get his current wife to agree to sell the beach house, evinces his stubborn resistance towards his court-ordered payment obligations.
 

 25. For present purposes only, Defendant/Husband has the ability to free-up at least $300.00 more per month by selling the beach house.
 

 26. Defendant/Husband can free-up as much as $740.00 more per month by downwardly adjusting the amount of federal income taxes being withheld from his gross monthly income.
 

 27. For present purposes only, Defendant/Husband has the ability to free-up at least $600.00 more per month by downwardly adjusting the amount of federal income taxes being withheld from his gross monthly income.
 

 28. In addition to the above, Defendant/Husband has demonstrated his disregard for his familial and legal obligations relating to his prior marriage to Plaintiff/Wife by (a) remarrying as quickly as he did; and (b) growing his family with his current wife.
 

 The Contempt Order decrees in pertinent part:
 

 4. Defendant/Husband is sentenced to imprisonment for as long as the civil contempt continues, with such sentence being suspended upon his compliance with the following purge conditions:
 

 a. Defendant/Husband shall immediately begin paying at least $900.00 more per month to Plaintiff/Wife over and above his total monthly obligations due under the February 2013 Order, and
 

 b. Defendant/Husband's efforts in this regard must include, at the very least, downwardly adjusting the federal income taxes being withheld from his gross monthly income.
 

 *272
 
 5. This Court shall conduct a review hearing at 8:30 a.m. on Wednesday, January 22, 2014, to assess Defendant/Husband's compliance with these purge conditions, including any and all efforts he has made to free-up the $900.00 in additional funds.
 

 The trial court also awarded plaintiff attorneys' fees arising from her contempt motions but did not determine the amount.
 

 In the Order on Purge Condition Noncompliance, which was also entered on 27 May 2014, the trial court further decreed:
 

 1. This Court hereby activates the sentence of imprisonment for Defendant/Husband's continuing civil contempt of the February 2013 Order for the time period February 2013 through July 2013.
 

 2. Defendant/Husband shall be released from such imprisonment when he remits $5,639.70 for the benefit of Plaintiff/Wife, and such remittance shall include the $1,405.90 check if Plaintiff/Wife receives it.
 

 3. From the point of remittance forward, Defendant/Husband's civil contempt shall continue unless he makes payments consistent
 
 *494
 
 with the February 2013 Order and the purge conditions set by this Court.
 

 4. The amount of attorneys' fees to be awarded Plaintiff/Wife is deferred for future determination.
 

 5. This Court retains jurisdiction over this cause for such other orders as may become appropriate.
 

 Defendant timely filed notice of appeal from the Contempt Order and the Order on Purge Condition Noncompliance, both entered on 27 May 2014.
 
 [9]
 

 II. Appellate Jurisdiction
 

 Although the trial court's orders are interlocutory, defendant contends that the orders are immediately appealable because they affect a substantial right. "The appeal of any contempt order ... affects a
 
 *273
 
 substantial right and is therefore immediately appealable."
 
 Guerrier v. Guerrier,
 

 155 N.C.App. 154
 
 , 158,
 
 574 S.E.2d 69
 
 , 71 (2002). Accordingly, we hold that this appeal is properly before us.
 

 III. Discussion
 

 Defendant argues that the trial court erred in (1) concluding that he has the ability to either comply, or take reasonable measures that enable him to comply, with the February 2013 Order; (2) concluding that he has the ability to comply with the purge conditions established in the Contempt Order; (3) establishing impermissibly vague purge conditions; (4) reviewing his compliance with the purge conditions before entering the Contempt Order that set forth those purge conditions; and (5) awarding plaintiff attorneys' fees arising from her contempt motions.
 

 A. Standard of Review
 

 We review orders for contempt to determine if the findings of fact support the conclusions of law: "The standard of review we follow in a contempt proceeding is limited to determining whether there is competent evidence to support the findings of fact and whether the findings support the conclusions of law."
 
 Middleton v. Middleton,
 

 159 N.C.App. 224
 
 , 226,
 
 583 S.E.2d 48
 
 , 49 (2003) (quotation marks omitted).
 

 B. Contempt Order
 

 "This will be a slightly unusual contempt order[.]"
 
 [10]
 

 Defendant first argues that the trial court erred by concluding that he has the ability to either comply with the February 2013 Order or take reasonable measures to enable him to comply, even based upon the trial court's actual findings as to his income, expenses, and assets. This is not so much a legal argument as a mathematical one. The findings of fact make defendant's inability to fully comply quite clear.
 

 N.C. Gen.Stat. § 5A-21(a) provides:
 

 Failure to comply with an order of a court is a continuing civil contempt as long as:
 

 (1) The order remains in force;
 

 (2) The purpose of the order may still be served by compliance with the order;
 

 *274
 
 (2a) The noncompliance by the person to whom the order is directed is willful; and
 

 (3) The person to whom the order is directed is
 
 able to comply
 
 with the order or is able to
 
 take reasonable measures
 
 that would enable the person to comply with the order.
 

 N.C. Gen.Stat. § 5A-21(a) (2013) (emphasis added). "For civil contempt to be applicable, the defendant ... must have the present ability to comply, or the present ability to take reasonable measures that would enable him to comply, with the order."
 
 Teachey v. Teachey,
 

 46 N.C.App. 332
 
 , 334,
 
 264 S.E.2d 786
 
 , 787 (1980). "The purpose of civil contempt is not to punish but to coerce the defendant to comply with a court order."
 

 *495
 

 Cox v. Cox,
 

 133 N.C.App. 221
 
 , 226,
 
 515 S.E.2d 61
 
 , 65 (1999).
 

 Defendant challenges the following conclusions of law in its Contempt Order:
 

 7. Defendant/Husband willfully failed to comply with the February 2013 Order from February 2013 through July 2013, in that he had the ability to either (a)
 
 pay more
 
 towards his court-ordered obligations during such time period; or (b) take reasonable measures to enable him to
 
 pay more
 
 towards his court-ordered obligations during such time period, yet deliberately did not do so.
 

 8. Defendant/Husband is in continuing civil contempt of the February 2013 Order.
 

 9. Defendant/Husband has the present ability to comply, or otherwise take reasonable measures to enable him to comply, with the purge conditions decreed herein.
 

 (Emphasis added.)
 

 Thus, the trial court did not conclude that defendant had the ability to pay
 
 all
 
 of his obligations under the February 2013 Order, only that he could have paid "more" or that he could have taken reasonable measures to enable him to pay "more[.]"
 

 i. Ability to Comply with February 2013 Order
 

 According to the trial court's findings of fact in the Contempt Order and the February 2013 Order establishing the obligations, defendant's income and expenses were as follows:
 

 Defendant's gross income
 

 $9,491.30
 

 Contempt Order, Finding of Fact 19(a)
 

 Housing allotment deduction
 

 ($1,965.00)
 

 Contempt Order, Finding of Fact 19(a)
 

 Non-discretionary withholding for federal income taxes
 

 ($1,110.88)
 

 Contempt Order, Finding of Fact 19(c)
 

 Social security taxes
 

 ($451.59)
 

 Contempt Order, Finding of Fact 19(c)
 

 Medicare taxes
 

 ($105.61)
 

 Contempt Order, Finding of Fact 19(c)
 

 State taxes
 

 ($440.00)
 

 Contempt Order, Finding of Fact 19(c)
 

 Discretionary withholding for life insurance
 

 ($27.00)
 

 Contempt Order, Finding of Fact 19(c)
 

 Discretionary withholding for dental insurance
 

 ($6.50)
 

 Contempt Order, Finding of Fact 19(c)
 

 Defendant's shared expenses
 

 ($900.00)
 

 February 2013 Order, Finding of Fact 138
 

 Defendant's individual expenses
 

 ($1,149.47)
 

 February 2013 Order, Finding of Fact 138
 

 Defendant's financial responsibility for children with second wife
 

 ($1,046.88)
 

 February 2013 Order, Finding of Fact 129
 

 Defendant's disposable income
 

 $2,288.37
 

 Thus, defendant was left with a disposable income of $2,288.37. He was under order to pay the following amounts each month during the time period of February 2013 until July 2013:
 

 Credit card payments (per equitable distribution)
 

 $1,250.00
 

 February 2013 Order, Decretal Provision 4
 

 Child support
 

 $1,880.48
 

 February 2013 Order, Decretal Provision 11
 

 Alimony
 

 $2,500.00
 

 February 2013 Order, Decretal Provision 17
 

 Attorneys' fees
 

 $250.00
 

 February 2013 Order, Decretal Provision 23
 

 Total monthly obligation
 

 $5,880.48
 

 *496
 

 *276
 
 Based upon the amounts as determined by the trial court, defendant would have a shortfall of $3,592.11 each month. On top of that shortfall, defendant was also required to pay a lump sum of $9,100.00 in alimony arrears by 5 April 2013. We note that in the February 2013 Order, the trial court had also ordered defendant to pay a lump sum of $1,000.00 in attorneys' fees by 5 April 2013, but the trial court did not mention this amount in its Contempt Order. Accordingly, the trial court's findings of fact demonstrated that defendant lacked the ability to comply with the February 2013 Order.
 

 We also note that this is not a case in which a defendant simply failed to pay anything at all. The trial court found that during the time period addressed by the order's findings, February 2013 to July 2013, defendant should have paid ongoing obligations totaling $35,282.88, but he paid $31,612.08, or only $3,670.80 less than owed for the ongoing obligations. His total arrears increased to $12,770.80 because of the preexisting $9,100.00 alimony arrearage.
 

 ii. Taking Reasonable Measures
 

 Defendant next argues that the trial court erred in concluding that he could have taken reasonable measures to comply with the February 2013 Order by "freeing up" $900.00 more per month to pay to plaintiff. The trial court found that defendant could "free up" $300.00 per month by selling his and his second wife's beach house and $600.00 per month by "downwardly adjusting the amount of federal income taxes being withheld from his gross monthly income." But even assuming
 
 arguendo
 
 that defendant could "free up" $900.00 per month, he still could not have complied with the February 2013 Order because, as discussed above, his obligations exceeded his disposable income by $3,592.11 per month, not including the $9,100.00 alimony arrearage.
 

 Defendant's counsel pointed out the mathematical impossibility for defendant to "free up" enough funds to pay his obligations during argument before the trial court:
 

 [Defendant's counsel]: And what-where I'm going with this is there is no way to free up enough cash flow to pay everything. That even if he had zero taxes taken out, his gross income is not enough to meet-meet the obligations.
 

 *277
 
 So there is nothing he can do to increase cash flow to satisfy this.
 

 THE COURT: I've already found there is, haven't I? [Plaintiff's counsel]: Yes.
 

 [Defendant's counsel]: Well, Your Honor, he is-he is under obligation to pay eighty-two thousand dollars to her in 2013. His gross income in 2013 was eighty-two thousand dollars. His gross income. So no matter how he adjusts his taxes, the-he can't free up the cash flow. And-
 

 THE COURT: Then you're going to have to appeal my prior decision.
 

 Of course, defendant has not yet had the opportunity to appeal the "prior decision"; that order is still not final and appealable thanks to the trial court's order granting plaintiff's motion for a new trial regarding defendant's military retirement benefits. The merits of the February 2013 Order are not before us. But even if that "prior decision" is ultimately modified by the trial court or reversed or vacated on a future appeal, defendant has already been held in contempt and ordered incarcerated for his failure to comply with it, so we must address his ability to pay.
 

 In the Contempt Order, as to defendant's ability to pay "more" than he had been paying, the trial court faulted defendant for failing to force his second wife to sell their beach house despite the fact that defendant testified that they owned the house as tenants by the entirety. Under N.C. Gen.Stat. § 39-13.6(a), "[n]either spouse may bargain, sell, lease, mortgage, transfer, convey or in any manner encumber any property so held without the written joinder of the other spouse." N.C. Gen.Stat. § 39-13.6(a) (2013). The trial court seemed to recognize this rule:
 

 THE COURT: ... Is there a way-do you believe, folks, there is a way for me to order him to take some unilateral action related to the beachfront property; whether his wife cooperates or not?
 

 *497
 
 [Defendant's counsel]: You're saying whether you could order him to sell it whether she wants to or not?
 

 THE COURT: Well, no, I'm not saying-I don't believe I can order that.
 

 Additionally, the Contempt Order also notes that there is a mortgage on the property, so even if it were sold, there is no evidence or finding
 
 *278
 
 of the amount of equity in the house or that defendant would receive net proceeds from the sale. It appears that a sale would only eliminate the monthly mortgage payment and would not provide a source of additional funds to pay off arrears.
 

 Also in regard to defendant's failure to be able to pay "more" than he had been paying, even if he could not pay all of his obligations, the trial court found that he showed "disregard for his familial and legal obligations" by "remarrying as quickly as he did" and "growing his family with his current wife [,]" or having additional children. But he had remarried and already had three additional children at the time of entry of the February 2013 Order. His support obligation for three additional children was specifically found in that order; he and his second wife had only their fourth child after entry of the February 2013 Order. Plaintiff and the trial court may believe that defendant would have been wise not to remarry and that he and his second wife should not have had any children, and certainly not four, but North Carolina's law does not impose limitations on an individual's right to marry or have children. We cannot discern how defendant's exercise of these fundamental rights to marry and procreate, in this particular situation, demonstrates a "disregard for his familial and legal obligations[.]"
 

 We further note that there is no question in this case of intentional suppression of earnings or hiding income. Defendant is employed by the United States Army, and his income information is clear and undisputed. Accordingly, we hold that the trial court erred in its conclusion that defendant could have taken "reasonable measures" to comply with the February 2013 Order, based upon the trial court's own findings as to defendant's income and expenses and the manner in which the trial court found that he could "free up" additional funds.
 

 iii. Partial Compliance
 

 Plaintiff responds that the trial court need not find that defendant has the ability to pay the entire amount of the obligations to hold him in contempt, but it is sufficient that the trial court find that he had the ability to pay at least a portion of the sums owed and that he willfully failed to pay as much as he could have. We agree with plaintiff that an interpretation of the cases which would always require a finding of full ability to pay would "encourage parties to completely shirk their court-ordered obligations if they lack the ability to fully comply with them." Yet the cases do not go quite so far as plaintiff suggests. An obligor may be held in contempt for failure to pay less than he could have paid, even if not the entire obligation, but the trial court must find that he has the ability to fully comply with any purge conditions imposed upon him.
 

 *279
 
 The seminal case on this issue from our Supreme Court is
 
 Green v. Green,
 
 a civil contempt proceeding for nonpayment of alimony, in which the Court held that the trial court's findings of fact were insufficient to support its order that the defendant be imprisoned until he paid the amounts owed in full:
 

 The judge who heard the proceedings in contempt recited the findings of fact made by the judge who granted the order allowing alimony, and added two others, in words as follows: "I further find that said defendant could have paid at least a portion of said money, as provided in said order, and that he has willfully and contemptuously failed to do so. I further find that he is a healthy and able-bodied man for his age, being now about fifty-nine years old." So, notwithstanding the finding of the fact that the defendant was able to pay only a part of the amount ordered to be paid, he was to be committed to the common jail until he should comply with the order making the allowance in the nature of alimony, that is, until he should pay the whole amount. Clearly, the judgment
 
 *498
 
 can not be supported on that finding of fact.
 

 Green v. Green,
 

 130 N.C. 578
 
 , 578-79,
 
 41 S.E. 784
 
 , 785 (1902).
 

 Although the Court in
 
 Green
 
 did not state this explicitly, it seems that the defendant paid nothing toward his alimony obligation and that the trial court found that he could have paid "at least a portion" of the amounts owed.
 

 Id.,
 

 41 S.E. at 785
 
 . Indeed, this sort of vague finding that an obligor could have paid "more" could be made in almost any case where the obligor has paid nothing at all, since most obligors probably have the ability to pay $1.00 per month, for example. Presumably, the defendant in
 
 Green
 
 had the ability to pay some significant amount but less than the full amount. The problem with the trial court's order in
 
 Green
 
 was that it went too far with the remedy-despite a finding that the defendant had the ability to pay only a portion of the sums owed, he was imprisoned "until he should pay the whole amount."
 
 Id.
 
 at 579,
 
 41 S.E. at 785
 
 . In addition, we can also infer from this opinion that the only source of the defendant's funds was his labor and that he was "healthy and able-bodied[,]" thus able to work to earn funds to pay the plaintiff, although he could not work while in jail.
 
 Id.
 
 at 578-79,
 
 41 S.E. at 785
 
 . He apparently did not have investments or other sources of funds upon which to draw.
 
 See
 

 id.,
 

 41 S.E. at 785
 
 . Based upon the trial court's findings, the order showed that the defendant had the ability to earn enough income to pay only part of his alimony before he went to jail; while in
 
 *280
 
 jail, he would have no ability to pay anything although he was ordered to pay in full.
 

 Id.,
 

 41 S.E. at 785
 
 . For these reasons, the Court found error.
 

 Id.,
 

 41 S.E. at 785
 
 .
 

 Green
 
 has been followed for over 100 years in both alimony cases and child support cases.
 
 See, e.g.,
 

 Brower v. Brower,
 

 70 N.C.App. 131
 
 , 134,
 
 318 S.E.2d 542
 
 , 544 (1984) ("Though the order appealed from requires defendant's imprisonment for continuing civil contempt until he pays $10,590, it is supported only by a finding that he had the present ability to pay a portion of that sum. A similar order was struck down by our Supreme Court in
 
 Green v. Green,
 

 130 N.C. 578
 
 ,
 
 41 S.E. 784
 
 (1902). Since the same law still abides, the order in this case must also be vacated.");
 
 Mauney v. Mauney,
 

 268 N.C. 254
 
 , 257-58,
 
 150 S.E.2d 391
 
 , 394 (1966) ;
 
 Clark v. Gragg,
 

 171 N.C.App. 120
 
 , 125-26,
 
 614 S.E.2d 356
 
 , 360 (2005) ;
 
 Bishop v. Bishop,
 

 90 N.C.App. 499
 
 , 502, 506,
 
 369 S.E.2d 106
 
 , 108, 110 (1988). These cases are all very fact-specific.
 

 Considering the facts before us, this case is very much like
 
 Green.
 
 The trial court did not find that defendant had the ability to pay his obligations in full, but only in part, yet still ordered him to (1) pay those obligations in full; and (2) pay an additional $900.00 per month "over and above" those obligations.
 
 [11]
 
 We are not addressing a case in which a trial court has held an obligor in contempt despite a finding that he does not have the ability to pay in full although he does have the ability to pay
 
 more
 
 than he paid, and where the trial court has set purge conditions which the obligor has the ability to pay but is less than payment in full. Here, the trial court held defendant in contempt for failure to do something he did not have the ability to do, based upon the trial court's own findings, and then ordered him to pay even more as part of his purge conditions. In addition, as discussed above, defendant had paid a substantial portion of his obligations under the February 2013 Order. Accordingly, we hold that the trial court erred in holding defendant in civil contempt and thus vacate its Contempt Order.
 

 C. Order on Purge Condition Noncompliance
 

 Defendant next challenges the Order on Purge Condition Noncompliance, because he did not have the ability to comply with the purge conditions set forth in the Contempt Order and the purge
 
 *281
 
 conditions were impermissibly vague. Since the Order on Purge Condition Noncompliance and the Contempt Order were entered on the same date and
 
 *499
 
 are interrelated orders, we believe it is necessary to address the issues raised by the Order on Purge Condition Noncompliance as well, despite the fact that we are vacating the Contempt Order.
 

 In the Contempt Order, the trial court established two purge conditions:
 

 a. Defendant/Husband shall immediately begin paying at least $900.00 more per month to Plaintiff/Wife
 
 over and above
 
 his total monthly obligations due under the February 2013 Order, and
 

 b. Defendant/Husband's efforts in this regard must include, at the very least, downwardly adjusting the federal income taxes being withheld from his gross monthly income.
 

 (Emphasis added.) In the Order on Purge Condition Noncompliance, the trial court concluded that defendant had failed to comply with both purge conditions.
 

 In establishing purge conditions, the trial court must satisfy two requirements. First, the trial court must make findings of fact as to defendant's present ability to comply with the purge conditions. In
 
 McMiller v. McMiller,
 
 this Court explained this requirement:
 

 In the instant case, the trial judge found as fact only that defendant "has had the ability to pay as ordered." This finding justifies a conclusion of law that defendant's violation of the support order was willful[;] however, standing alone, this finding of fact does not support the conclusion of law that defendant has the present ability to purge himself of the contempt by paying the arrearages.
 

 To justify conditioning defendant's release from jail for civil contempt upon payment of a large lump sum of arrearages, the district court must find as fact that defendant has the present ability to pay those arrearages. The majority of cases have held that to satisfy the "present ability" test defendant must possess some amount of cash, or asset readily converted to cash. For example, in [
 
 Teachey,
 

 46 N.C.App. 332
 
 ,
 
 264 S.E.2d 786
 
 ], defendant could pay $4825 in arrearages either by selling or
 
 *282
 
 mortgaging mountain property in Virginia.
 
 Accord
 

 Jones v. Jones,
 

 62 N.C.App. 748
 
 ,
 
 303 S.E.2d 583
 
 (1983) (defendant could not pay $6540 in arrearages because land he owned was already heavily mortgaged).
 

 In the case at bar, there was no finding relating to defendant's ability to come up with $4320.50 in readily available cash. The only finding by the trial court related to defendant's past ability to pay the child support payments. No finding was made as to [the defendant's] present ability to pay the arrearages necessary to purge himself from contempt.
 

 McMiller v. McMiller,
 

 77 N.C.App. 808
 
 , 809-10,
 
 336 S.E.2d 134
 
 , 135-36 (1985) (citations omitted).
 

 Second, the trial court must clearly specify what defendant must do to purge himself of contempt and exactly when he must do it.
 
 See
 
 N.C. Gen.Stat. § 5A-22(a) (2013) ("The order of the court holding a person in civil contempt must specify how the person may purge himself of the contempt."). In
 
 Wellons v. White,
 
 this Court explained this requirement:
 

 Furthermore, a contempt order "must specify how the person may purge himself of the contempt." N.C. Gen.Stat. § 5A-22(a) (2011) ;
 
 see also
 

 Cox,
 

 133 N.C.App. at 226
 
 ,
 
 515 S.E.2d at 65
 
 (holding that a contempt order must "clearly specify what the defendant can and cannot do"); [
 
 Scott v. Scott,
 

 157 N.C.App. 382
 
 , 394,
 
 579 S.E.2d 431
 
 , 439 (2003) ] (holding that requirements to purge civil contempt may not be "impermissibly vague").
 

 Wellons v. White,
 

 229 N.C.App. 164
 
 , 181,
 
 748 S.E.2d 709
 
 , 722 (2013). A trial court may not hold a person in civil contempt indefinitely.
 
 Id.
 
 at 181-83,
 
 748 S.E.2d at 722-23
 
 .
 

 i. Ability to Comply with Purge Conditions
 

 Regarding the first purge condition, the trial court found that defendant had the ability to "free up" some funds to pay "more" and that he should thus pay $900.00 per month "over and above his total monthly obligations due under the February 2013 Order" for some indefinite period of time. There was some confusion in the record regarding
 
 *500
 
 whether defendant was to pay $900.00 more than he had been paying (but still less than the entire obligation) or whether he was to pay $900.00 more than the obligations as set by the February 2013 Order.
 
 *283
 
 When rendering the Contempt Order in December 2013, the trial court stated that he would order defendant to pay $900.00
 
 more than he had been paying
 
 (which was less than the full obligation):
 

 Now, I am ordering that [defendant] begin to pay at least-I am not making a finding that this is the maximum amount he can pay;
 
 I'm finding that I can determine from this evidence that he has the ability to pay at least this much more than he has been paying.
 
 [Plaintiff's counsel], stop me if you-if you think there's another way to word this.
 
 I guess the question is what he's been paying if I'm going to do it this way.
 
 But there is at least six hundred dollars plus six hundred-plus three hundred; at least nine hundred dollars more available for him to pay per month. And I expect him to start paying that immediately, and I expect that when he reports back either by his own presence or through counsel to demonstrate what steps he has made to free up that nine hundred dollars per month. At the very least that would be an adjustment in his withholding.
 

 (Emphasis added.)
 

 But the Contempt Order entered on 27 May 2014 does not require defendant to pay $900.00 more than he had been paying, as the trial court stated above, and we are bound by the order as it was entered.
 
 See
 

 Oltmanns v. Oltmanns,
 
 ---N.C.App. ----, ----,
 
 773 S.E.2d 347
 
 , 351 (2015) ("[T]he written entry of judgment is the controlling event for purposes of appellate review[.]");
 
 In re Estate of Walker,
 

 113 N.C.App. 419
 
 , 420,
 
 438 S.E.2d 426
 
 , 427 (1994) ("[The] announcement of judgment in open court merely constitutes the rendition of judgment, not its entry.... Entry of judgment by the trial court is the event which vests jurisdiction in this Court, and the judgment is not complete for the purpose of appeal until its entry. Since entry of judgment is jurisdictional, this Court has no authority to hear an appeal where there has been no entry of judgment.") (citation omitted). The Contempt Order instead decrees that defendant "shall immediately begin paying at least $900.00 more per month to [plaintiff]
 
 over and above
 
 his total monthly obligations due under the February 2013 Order[.]" (Emphasis added.) This would be a total of $6,780.48 per month-despite the trial court's findings, as tabulated above, that show that defendant did not have the ability to pay the full amounts owed under the February 2013 Order.
 

 In addition, to enter an order that defendant pay $900.00
 
 more than he had been paying,
 
 the order would have to make a finding as to a
 
 *284
 
 particular set amount that he had been paying.
 
 [12]
 
 The findings of fact show that he paid different amounts in different months, ranging from $3,604.56 to $9,303.26 during the relevant time period. The order would be too indefinite to be enforceable if it required him to pay $900.00 more than an unspecified number.
 
 See
 

 Morrow v. Morrow,
 

 94 N.C.App. 187
 
 , 189,
 
 379 S.E.2d 705
 
 , 706 (1989) ("A judgment must be complete and certain, indicating with reasonable clearness the decision of the court, so that such judgment may be enforced. If the parties are unable to ascertain the extent of their rights and obligations, a judgment may be rendered void for uncertainty.") (citation omitted),
 
 cert. denied,
 

 326 N.C. 365
 
 ,
 
 389 S.E.2d 816
 
 (1990). But the Contempt Order as entered does specify a number, which is the total obligation due under the February 2013 Order, plus $900.00 per month "over and above" that amount. Based upon the trial court's findings of fact and conclusions of law, defendant did not have the ability to pay the entire monthly obligation owed under the February 2013 Order, much less $900.00 in addition to that amount.
 

 ii. Impermissibly Vague Purge Conditions
 

 The Contempt Order also fails to set a date upon which the monthly payment of $900.00 "over and above" the February 2013 Order's obligations would end. Plaintiff argues
 
 *501
 
 that the absence of an ending date for the monthly payment of $900.00 "over and above" the February 2013 Order's obligations indicates that this additional payment is simply a monthly payment towards the arrears of $12,770.80, which would end on a definite date when the arrears were paid in full. (Plaintiff contends that the $900.00 monthly payments would satisfy the first purge condition in "just over 14 months" since "$12,770.80 delinquency ÷ $900.00 additional payment = 14.189 months)." This is a reasonable argument, but it might be more convincing if the amount paid each month would divide evenly by a number of months. By plaintiff's logic, the order implies that defendant must pay $900.00 for fourteen months and 18.98 percent of that amount in the fifteenth month, or $170.80. Even if this was the trial court's intent, the order is impermissibly vague as written.
 
 See
 

 id.,
 

 379 S.E.2d at 706
 
 . Accordingly, we hold that the trial court erred in failing to establish a definite date by which defendant could have purged himself of the contempt.
 
 See
 

 Wellons,
 

 229 N.C.App. at 183
 
 ,
 
 748 S.E.2d at 722
 
 ("We will not allow the district court to hold [the defendant] indefinitely in contempt."). We also note that in the Order on Purge Condition Noncompliance, the trial court repeated this error when it ordered that
 
 *285
 
 defendant's "civil contempt shall continue unless he makes payments consistent with the February 2013 Order and the purge conditions set by this Court."
 

 Regarding the second purge condition, the trial court found that defendant could "free up" $600.00 per month by "downwardly adjusting the amount of federal income taxes being withheld from his gross monthly income." The trial court's second purge condition was: "[Defendant's] efforts in this regard must include, at the very least, downwardly adjusting the federal income taxes being withheld from his gross monthly income." In the Order on Purge Condition Noncompliance, the trial court found that defendant had in fact "downwardly adjusted the federal income taxes being withheld from his gross monthly income." Nevertheless, the trial court found that defendant had failed to satisfy the second purge condition because he "did not consult any tax professional to ascertain whether he downwardly adjusted such income tax withholdings
 
 to the greatest extent possible.
 
 " (Emphasis added.)
 

 The second purge condition to "at the very least, downwardly adjust[ ] the federal income taxes being withheld from his gross monthly income" would seem to be sufficiently definite as written, but the Order on Purge Condition Noncompliance goes beyond the condition as stated and adds additional requirements. The Contempt Order, both as rendered in open court and as written and entered, did not direct defendant to consult a tax professional or to lower his withholdings "to the greatest extent possible." Theoretically, "to the greatest extent possible" could mean that defendant would claim exemptions to eliminate
 
 all
 
 federal tax withholdings, but then he would likely owe taxes and penalties for underpayment upon filing his income tax returns. Because defendant "downwardly adjust[ed] the federal income taxes being withheld from his gross monthly income[,]" in accordance with the Contempt Order's second purge condition, the trial court's finding of fact on this issue does not support its conclusion of law that defendant had failed to satisfy the second purge condition. Accordingly, we vacate the Order on Purge Condition Noncompliance.
 

 D. Premature Compliance Hearing
 

 Although we are vacating the Contempt Order and the Order on Purge Condition Noncompliance as discussed above, we also address defendant's argument that the trial court erred in conducting a compliance hearing on 22 January 2014, four months
 
 before
 
 the entry of the Contempt Order for which compliance was being determined. Both the Contempt Order and the Order on Purge Condition Noncompliance
 
 *286
 
 were entered on 27 May 2014, despite the fact that the hearing regarding contempt occurred on 2 December 2013 and the hearing regarding noncompliance with purge conditions occurred on 22 January 2014. In other words, the order setting forth defendant's purge conditions and obligations was not in writing and entered until nearly six months after he was to begin complying with it. Defendant's counsel specifically objected to the hearing on compliance for this reason, as noted by the trial court's Finding of Fact 4: "Defendant/Husband's counsel objected to this
 
 *502
 
 Court conducting the compliance hearing on January 22, 2014, given that an Order had not yet been entered as a result of the December 2, 2013 contempt hearing. This Court overruled such objection." We conclude that defendant's objection to holding the compliance hearing prior to entry of the Contempt Order was correct.
 

 Our courts have stated this rule many times, but perhaps it bears repeating: An order is entered "when it is reduced to writing, signed by the judge, and filed with the clerk of court." N.C. Gen.Stat. § 1A-1, Rule 58 (2013) ;
 
 see also
 

 Watson v. Price,
 

 211 N.C.App. 369
 
 , 370,
 
 712 S.E.2d 154
 
 , 155,
 
 disc. review denied,
 

 365 N.C. 356
 
 ,
 
 718 S.E.2d 398
 
 (2011). N.C. Gen.Stat. § 5A-23(e) specifically requires entry of a written order for civil contempt. N.C. Gen.Stat. § 5A-23(e) (2013) ("At the conclusion of the hearing, the judicial official must enter a finding for or against the alleged contemnor on each of the elements set out in G.S. 5A-21(a). If civil contempt is found, the judicial official must enter an order finding the facts constituting contempt and specifying the action which the contemnor must take to purge himself or herself of the contempt.") An order cannot be modified or enforced or appealed before it is entered.
 
 See
 

 Carland v. Branch,
 

 164 N.C.App. 403
 
 , 405,
 
 595 S.E.2d 742
 
 , 744 (2004) ("Since there was no order 'entered' when defendant filed her motion to modify, there was nothing to modify.");
 
 Watson,
 

 211 N.C.App. at 371
 
 ,
 
 712 S.E.2d at 155
 
 ("[A] judgment that has merely been rendered, but which has not been entered, is not enforceable until entry.");
 
 Estate of Walker,
 

 113 N.C.App. at 420
 
 ,
 
 438 S.E.2d at 427
 
 ("Since entry of judgment is jurisdictional, this Court has no authority to hear an appeal where there has been no entry of judgment."). The announcement of an order in court merely constitutes rendition of the order, not its entry.
 
 Estate of Walker,
 

 113 N.C.App. at 420
 
 ,
 
 438 S.E.2d at 427
 
 . The final order as written, signed, and filed-the order as entered-is the controlling order, not the rendition.
 
 See
 

 Oltmanns,
 
 --- N.C.App. at ----,
 
 773 S.E.2d at 351
 
 ("[T]he written entry of judgment is the controlling event for purposes of appellate review[.]").
 

 *287
 
 We fully understand the challenges faced by trial courts and counsel in getting written orders prepared, signed, and entered quickly, but particularly in the context of civil contempt, where the statute requires a written order and a person may be imprisoned for failure to comply, it is imperative that an order be entered before an obligor is held in contempt of that order.
 
 See
 
 N.C. Gen.Stat. § 5A-23(e). This is especially important in a case like this, since defendant's purge conditions as announced at the 2 December 2013 hearing were not at all clear or definite, as highlighted by the quote from the trial court at the beginning of our discussion of the Contempt Order. In fact, the trial court directed counsel:
 

 So you all figure that out, and if they put some idea to you about what steps he can take to free up money from that beachfront property, he'd best come in with his explanation about why he couldn't do it or shouldn't do it. Make sense? This will be a slightly unusual contempt order, but in honor of a non-family law attorney joining us today, I guess we'll see what happens.
 

 Accordingly, should the trial court enter a contempt order on remand, it should sign and file a written order establishing clear, specific purge conditions and addressing defendant's ability to comply with those purge conditions.
 
 [13]
 

 IV. Conclusion
 

 For the foregoing reasons, we vacate the Contempt Order and the Order on Purge Condition Noncompliance and remand the case to the trial court for further proceedings consistent with this opinion.
 

 VACATED AND REMANDED.
 

 Judges McCULLOUGH and INMAN concur.
 

 [1]
 

 The absolute divorce was entered in Indiana, where a full year of separation prior to filing for the divorce is not required.
 
 See
 
 Ind.Code Ann. § 31-15-2-5 (LexisNexis 2007).
 

 [2]
 

 18 May 2012 is the date of a letter from the trial court to counsel for the parties setting forth the trial court's rulings and directing plaintiff's counsel to prepare the order. Although we cannot address the propriety of the "
 
 nunc pro tunc
 
 " signing of the February 2013 Order because it is not a subject of this appeal, we note that "[
 
 n]unc pro tunc
 
 orders are allowed
 
 only
 
 when a judgment has been actually rendered ... provided that the fact of its rendition is satisfactorily established and no intervening rights are prejudiced."
 
 Whitworth v. Whitworth,
 

 222 N.C.App. 771
 
 , 777-78,
 
 731 S.E.2d 707
 
 , 712 (2012) (emphasis added and quotation marks and brackets omitted). "[E]ntry of the order
 
 nunc pro tunc
 
 does not correct the defect because what the court did not do then cannot be done now simply by use of these words[.]"
 

 Id.
 

 at 778
 
 ,
 
 731 S.E.2d at 712
 
 (quotation marks, brackets, and ellipses omitted).
 

 [3]
 

 Based upon a date of entry of 4 February 2013, the alimony arrears would have been due by 5 April 2013.
 

 [4]
 

 Based upon a date of entry of 4 February 2013, the $1,000.00 amount would have been due by 5 April 2013.
 

 [5]
 

 In his motion to modify, defendant alleged: "Since Defendant's Rule 52 and 59 motions were denied, and since the presiding Judge indicated he believed Defendant could file a motion to modify, Defendant is now filing this motion to modify."
 

 [6]
 

 As noted above, the trial court had announced this ruling on 26 April 2013.
 

 [7]
 

 We further note that the fourteen-month delay between the December 2011 trial and the entry of the February 2013 Order, which is still not final, will be compounded by the additional delay until a final order is entered after a hearing of plaintiff's post-trial motion.
 
 See
 

 Plomaritis v. Plomaritis,
 

 222 N.C.App. 94
 
 , 110-11,
 
 730 S.E.2d 784
 
 , 795 (2012) ("As the 18 month delay was more than a
 
 de minimis
 
 delay and was prejudicial under the facts of this case, it would require a new hearing for the parties to provide additional evidence[.]") (quotation marks omitted).
 

 [8]
 

 The Contempt Order states that all three contempt motions were heard, but the transcript indicates that only the first two were considered, since the "Second Supplemental Motion for Contempt" (which is the motion filed 27 November 2013) had been served upon defendant less than five business days before the hearing.
 
 See
 
 N.C. Gen.Stat. § 5A-23(a1) (2013). The trial court stated that it would consider contempt as of 26 July 2013, which would cover the time periods of the first two contempt motions filed, and based upon the transcript and the dates found in the order, this is what happened, despite the order's recitation that the trial court heard the motion filed 27 November 2013.
 

 [9]
 

 Perhaps due to the delay in entry of the two orders and the fact that they were entered on the same day, the two orders have interrelated provisions which require us to consider both of them to understand each one individually, although we will address the issues raised as to each order independently to the extent possible.
 

 [10]
 

 This was the trial court's description of the Contempt Order when it was announced.
 

 [11]
 

 The trial court established the first purge condition: "[Defendant] shall immediately begin paying at least $900.00 more per month to [plaintiff] over and above his total monthly obligations due under the February 2013 Order[.]"
 

 [12]
 

 The trial court noted the need to determine this number during rendition of the ruling: "I guess the question is what he's been paying if I'm going to do it this way."
 

 [13]
 

 Because we are vacating the Contempt Order and the Order on Purge Condition Noncompliance and remanding this case, we do not address the issue of whether the trial court erred in awarding plaintiff attorneys' fees arising from her contempt motions, but any ruling upon attorneys' fees contained in those orders is also vacated since it is contained in the vacated orders.